In re the Commitment of Derek Miller:

State of Wisconsin, Petitioner-Respondent,

v.

Derek Miller, Respondent-Appellant.†

Court of Appeals

*No. 98–0394. Submitted on briefs June 1, 1999.—Decided July 27, 1999.*

(Also reported in 600 N.W.2d 224.)

†Petition to review granted.

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Ellen Henak*, assistant state public defender.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Warren D. Weinstein*, assistant attorney general.

Before Wedemeyer, P.J., Fine and Curley, JJ.

CURLEY, J. Derek Miller appeals the judgment committing him as a sexually violent person to a secure mental health unit or facility pursuant to §§ 980.05 and 980.06(2)(b), STATS., and from an order denying his post-commitment motion. He argues that the trial court erred when it found that the "other facility" language in § 980.06(2)(b), STATS., 1995–96, did not provide a third option for placement of sexually violent persons. Consequently, Miller believes that the trial court erroneously exercised its discretion when it committed him to a secure mental health unit or facility because it incorrectly interpreted the placement options available for sexually violent persons. We affirm. The trial court correctly interpreted the placement options available for sexually violent persons listed in § 980.06(2)(b) to be limited to two—institutional care in a secure mental health unit or facility, or supervised release. As a consequence, the trial court properly exercised its discretion when it placed Miller in a secure mental health unit or facility.

## I. BACKGROUND.

Derek Miller was sent to the Ethan Allen School when he was approximately thirteen years old, after being adjudged delinquent for committing one count of first-degree sexual assault. When he was nineteen years of age, the State began commitment proceedings against him, claiming that he was a sexually violent person as that term is defined in § 980.01(7), STATS.[1]

---

[1] Section 980.01(7), STATS., provides:

(7) "Sexually violent person" means a person who has been convicted of a sexually violent offense, has been adjudicated delinquent for a sexually violent offense, or has been found not guilty of

569

The trial court found probable cause to believe that Miller was a sexually violent person and, pursuant to § 980.04(3), STATS., ordered Miller to Mendota State Hospital where Dr. Dennis Doren conducted an evaluation. At the request of Miller, Dr. Kenneth Smail was appointed as an expert witness on his behalf, and he also prepared a report for the court. Ultimately, Miller stipulated to the fact that he was a sexually violent person. The trial court then ordered a predisposition investigation and sent Miller back to Mendota State Hospital. After the predisposition report was prepared, the trial court held an evidentiary hearing to determine where Miller should be placed. At the hearing, the trial court considered the predisposition investigation report, the recommendations of the expert witnesses, the wishes of Miller and the arguments of counsel.

Miller's attorney, arguing that the experts were in agreement that Miller could be placed in a less restrictive setting than a secure mental health unit or facility, urged the trial court to place him in a locked facility as a condition of supervised release, as this placement would afford him more freedom than a secure mental health unit or facility.[2] The State proposed to the trial court that § 980.06(2)(b), STATS., could be interpreted to provide the trial court with three options for place-

or not responsible for a sexually violent offense by reason of insanity or mental disease, defect or illness, and who is dangerous because he or she suffers from a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence.

[2] Miller also was amenable to the trial court imposing upon him a variety of conditions including limiting his contact with children and prohibiting him from obtaining or viewing all forms of pornography and sexually explicit materials.

ment. The State read the sentence, "[A]n order for commitment under this section shall specify either institutional care in a secure mental health unit or facility, as provided under s. 980.065, or other facility or supervised release," as allowing for three separate commitment placement options: (1) a secure mental health unit or facility; (2) other facility; or (3) supervised release.

The trial court rejected the State's interpretation of the statute and Miller's request for supervised release. It ruled that the statute only provided for two dispositional options: (1) institutional care in a secure mental health unit or facility; or (2) supervised release. The trial court then committed Miller to the custody of the Department of Health and Family Services with the further order that Miller be committed to institutional care in a secure mental health unit or facility because, in the trial court's opinion, supervised release was not appropriate.

Miller filed a post-commitment motion in which he adopted the State's argument, raised at the dispositional hearing, that the trial court had three placement options. In his motion, he contended that the wording of § 980.06(2)(b), STATS., which states "or other facility," gave the trial court the option of placing him in a "locked facility." Miller also submitted that even if § 980.06(2)(b) is interpreted to permit only two placement options, secure mental unit or facility and supervised release, that the trial court erroneously exercised its discretion when ordering him to a secure mental health unit or facility. Miller maintained that the trial court should have ordered him to be released subject to supervision and as a condition of release he should have been committed to a "locked facility." Miller argues that the trial court was obligated to com-

571

mit him to the "least restrictive placement" and the trial court's placement of him in a secure mental health facility violated this directive. The trial court failed to address the motion within the appropriate time frame and the motion was deemed denied. This appeal follows.

Standard of Review

■

A determination of the appropriate placement under § 980.06(2)(b), STATS., is discretionary in nature because it involves consideration of interrelated statutory factors. *Cf. State v. Cook*, 66 Wis. 2d 25, 27–28, 224 N.W.2d 194, 196 (1974) (analyzing circuit court's decision to release a patient from a prior commitment order as a discretionary determination). Upon review, we analyze discretionary decisions to determine whether the circuit court logically interpreted the facts of record and whether it applied the correct legal standard to those facts. *See State v. Behnke*, 203 Wis. 2d 43, 58, 553 N.W.2d 265, 272 (Ct. App. 1996).

■

However, in considering whether the trial court properly interpreted § 980.06(2)(b), STATS., in determining that the trial court was limited to two possible placements for a sexually violent person, institutional care or supervised release, no deference is due the trial court's determination because the interpretation of a statute is a legal issue. Therefore, we will review *de novo* the trial court's interpretation of the statute. *See State v. Keding*, 214 Wis. 2d 363, 367, 571 N.W.2d 450, 452 (Ct. App. 1997).

## II. Analysis.

Miller argues that the trial court erred in two ways. First, he argues that the trial court failed to correctly interpret § 980.06(2)(b), Stats., as providing for three possible dispositions. Second, Miller contends that due to the trial court's inaccurate interpretation, it erroneously exercised its discretion when it ordered him to be placed in a secure mental health unit or facility.

A. The statutory section in question, § 980.06(2)(b), Stats., is ambiguous.

Section 980.06(2)(b), Stats., 1995–96, reads in pertinent part: "An order for commitment under this section shall specify either institutional care in a secure mental health unit or facility, as provided under s. 980.065, or other facility or supervised release."

Miller argues that § 980.06(2)(b), Stats., permits the trial court to place a sexually violent person in one of three places. He contends that the first is a Department of Corrections facility as provided under § 980.065, Stats.;[3] the second is in an "other facility";

[3] Section 980.065, Stats., 1995–96, provided:

**Secure mental health unit or facility for sexually violent persons.** (1) The department shall place a person committed to a secure mental health unit or facility under s. 980.06 (2) (b) at one of the following:

(a) The Wisconsin resource center established under s. 46.056.

(b) A secure mental health unit or facility provided by the department of corrections under sub. (2).

(2) The department may contract with the department of corrections for the provision of a secure mental health unit or facility for persons committed under s. 980.06 (2) (b) to a secure mental health unit or facility. The department shall operate a secure mental health unit or facility provided by the department of

and the third option is to release the person under supervision. Miller posits that the statute is not ambiguous and, thus, there is no reason to resort to outside sources to interpret it.

Contrary to its original position, the State now contends that the statute allows for only two placements: (1) a secure mental health unit or facility, as found in § 980.065, STATS., or another secure mental health unit or facility not listed in § 980.065; or (2) supervised release. To reach this determination, the State is now advocating that the statute be declared ambiguous.

" '[A] statute is ambiguous when it is capable of being understood in two or more different senses by reasonably well-informed persons.' " *State v. Sample*, 215 Wis. 2d 487, 495, 573 N.W.2d 187, 191 (1998) (quoted source omitted). We conclude that the statute here is ambiguous. The first sentence of § 980.06(2)(b), STATS., is not clear. The sentence can be read, as Miller suggests, as allowing a secure mental health unit or facility as defined in § 980.065, STATS., as the first option, followed by the option of placing a sexually violent person in another facility, and the third option being supervised release. Another reasonable interpretation, now endorsed by the state, is that the words "or other facility" refer to a secure mental health unit or facility not listed in § 980.065. Thus, under the State's interpretation, the trial court would have been able to commit a sexually violent person to either a secure mental health unit or facility (which could be run

corrections under this subsection and shall promulgate rules governing the custody and discipline of persons placed in the secure mental health unit or facility provided by the department of corrections under this subsection.

either by the Department of Corrections per § 980.065 or the Department of Health and Family Services), or supervised release. Since either interpretation is reasonable, we find the language of the statute ambiguous.

B. An examination of other factors satisfies us that the legislature intended only two possible placements.

■

"If ambiguity is found, a court should examine the scope, history, context, subject matter, and object of the statute in order to divine legislative intent." *State v. Williams*, 198 Wis. 2d 516, 525, 544 N.W.2d 406, 410 (1996). After applying the rule of law found in *Williams*, we are satisfied that the legislative intent behind § 980.06(2)(b), STATS., was to allow for only two possible placements for sexually violent persons. We reach this decision by considering several different matters.

The best evidence of the legislature's intent to permit only two placements for sexually violent persons can be gleaned from the fact that the legislature amended § 980.06(2)(b), STATS., in 1997 and struck the confusing language. 1997 Wisconsin Act 27 amended the sentence to read: "An order for commitment under this section shall specify either institutional care or supervised release." This minor revision, passed without comment, suggests to us that the legislature's original intent was to permit only two placements under the statute. We reach this conclusion by presuming that had the amendment intended a substantive change reducing the placement options from three to two, such a revision would have carried with it an

explanation for this significant change. No explanation was given. Thus, we conclude the legislature intended only two placement options in its earlier version of § 980.06(2)(b), and that the amendment was passed several years later merely to eliminate the confusion caused by the ambiguous wording.

We also adopt the State's reasoning that because the earlier version of § 980.065, STATS., did not list all the existing secure mental health units or facilities, the words "or other facility" following the phrase "as provided under s. 980.065" were meant to refer to other secure mental health units or facilities not listed in § 980.065.[4] The State relates that two such existing facilities not then listed in § 980.065 were Mendota State Hospital and Winnebago Mental Health Institute. The State contends that the purpose of the "other facility" language was to permit commitments to these other facilities. We agree with the State that not all

---

[4] Section 980.065, STATS., 1995–96, was also amended in 1997. The wording of the amended statute eliminated the need for the words "or other facility." Section 980.065, STATS., 1997–98, now reads:

**Institutional care for sexually violent persons. (1m)** The department may place a person committed to institutional care under s. 980.06 (2) (b) at a mental health unit or facility, including a secure mental health unit or facility at the Wisconsin resource center established under s. 46.056 or a secure mental health unit or facility provided by the department of corrections under sub. (2).

**(2)** The department may contract with the department of corrections for the provision of a secure mental health unit or facility for persons committed to institutional care under s. 980.06 (2) (b). The department shall operate a secure mental health unit or facility provided by the department of corrections under this subsection and shall promulgate rules governing the custody and discipline of persons placed by the department in the secure mental health unit or facility provided by the department of corrections under this subsection.

existing secure mental health units or facilities were listed in the prior § 980.065, and this fact lends support to our conclusion that the words found in § 980.06(2)(b), STATS., "or other facilities," were added to incorporate secure mental health facilities not then found in § 980.065 as options for placement.

Further support for our interpretation also comes from the absence of any rules governing a person who is committed to an "other facility." While the legislature set out stringent requirements in §§ 980.06(2)(d), STATS., and 980.08(5), STATS., that the trial court notify both the department and the municipality if a sexually violent person is released on supervision, and the department, in turn, is required by § 980.11, STATS., to notify others that a sexually violent person is in the community, there are no corresponding directives to the trial court or the department if the trial court determines that a person should be placed in a non-secure "other facility." We reason that, given the potential danger that a sexually violent person poses to the community when not in a secure mental health unit or facility, this lack of a notification procedure for someone committed to a facility where, presumably, a sexually violent person would be afforded more freedom than that given in a secure mental health unit, must mean that the legislature did not intend the trial court to be committing persons to facilities other than secure mental health units or facilities.

Similarly, Chapter 980 is also devoid of any procedure for a sexually violent person committed to an "other facility" to petition the committing court to modify its order to allow supervised release. Section 980.08, STATS., sets out the procedure for one in institutional care to petition the committing court to set conditions of release. No equivalent to § 980.08 exists for commit-

ments to "other facilities." Thus, we conclude that this absence of a procedure to petition the court from a placement in a non-secure facility supports our interpretation that only two placements were available.

Finally, we also note that while § 980.06(2)(d), STATS.,[5] contains authority for the trial court to set conditions of release for those on supervised release, there is no corresponding authority for the trial court to place conditions on one who is committed to a non-secure facility. Again, we believe this absence of any authority points to the fact that no commitments to "other facilities" were contemplated by the legislature. For all of the reasons stated, we are satisfied that the legislature intended only two placements after commitment as a sexually violent person and the legislature did not intend to permit the trial court to place a sexually violent person in a facility other than a secure mental health unit or facility.

C. The trial court properly exercised its discretion when committing Miller to a secure mental health unit or facility.

Miller claims that because the trial court erred in its interpretation of the dispositional options available to a sexually violent person, the trial court's error led to a placement that was not in accord with the recommendations of the various expert witnesses who testified at his dispositional hearing. Further, he argues that the placement was not the least restrictive as is mandated by § 980.06(2)(b), STATS. We disagree.

---

[5] Section 980.06(2)(d), STATS, provides in part:

(d)   An order for supervised release places the person in the custody and control of the department. A person on supervised release is subject to the conditions set by the court and to the rules of the department.

As noted, we have determined that the trial court correctly interpreted the options available under § 980.06(2)(b), STATS. The two options available to the trial court were institutional care or supervised release. Thus, the trial court was faced with either committing Miller to institutional care in a secure mental health unit or facility or supervised release. The trial court's choice of a secure mental health unit or facility was reasonable and based upon the evidence before it. The predisposition report recommended that the trial court should commit Miller to the Wisconsin Resource Center, a secure mental health facility. Although several of the expert witnesses suggested that Miller could be placed in a less restrictive setting than the Wisconsin Resource Center, none of the experts recommended that Miller be released under supervision. Thus, the trial court's decision to commit Miller to institutional care in a secure mental health unit or facility was reasonable. The trial court articulated its reasons for placing Miller in a secure mental health facility:

> It would seem that Mr. Miller is further down the path than a lot of other people that have come before me. But, under the circumstances and choosing between a supervised release and commitment to, for institutional care in a secure facility, I don't think there is any question at this point, at least not in my mind, that supervised release would not be appropriate . . . .

We agree. Not a single expert witness recommended supervised release at the time of the hearing. Thus, we conclude that the trial court properly exercised its discretion.

Finally, with respect to Miller's contention that the trial court erroneously exercised its discretion because it was obligated to place him in the least restrictive placement, we note that § 980.06(2)(b), STATS., does not obligate the trial court to decide the least restrictive placement; that obligation has been placed on the Department. "The *department* shall arrange for control, care and treatment of the person in the least restrictive manner . . . in accordance with the court's commitment order." Section 980.06(2)(b), STATS. (emphasis added). Therefore, the trial court was under no obligation to commit Miller to the least restrictive placement.

For the reasons stated, we affirm.

*By the Court.*—Judgment and order affirmed.