William Poluk, Personal Representative of the
Estate of Millie Fusfeld, Plaintiff-Respondent,

v.

J.N. Manson Agency, Inc. and General Insurance
Company of America, Defendants-Appellants.

Court of Appeals

*No. 02–0486. Submitted on briefs September 30, 2002.—Decided
October 29, 2002.*

2002 WI·App 286

(Also reported in 653 N.W.2d 905.)

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Bruce A. Olson* of *Davis & Kuelthau, S.C.* of Green Bay.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James A. Higgins* of *Byrne, Goyke, Tillisch & Higgins, S.C.* of Wausau.

Before Cane, C.J., Peterson and Curley, JJ.

¶ 1. CANE, C.J. J.N. Manson Agency, Inc., and General Insurance Company of America appeal a judgment entered on a jury verdict finding Manson liable to the Estate of Millie Fusfeld for negligence while acting as the Estate's insurance agent. Manson argues the trial court erred when it submitted the issue of Manson's negligence to the jury. The court determined Manson should have informed the Estate's agent about the vacancy clause and further clarified the coverage the Estate sought when the agent informed Manson the building was being sold and its tenant was leaving. Manson argues it had no duty to inquire further to determine if coverage was needed in the event of a vacancy, and we should therefore reverse the trial court's judgment. In the alternative, Manson argues if it did have this duty, the evidence established at trial was

insufficient to trigger the duty. In addition, Manson requests a new trial based on two evidentiary errors. Manson contends the trial court erred when it (1) admitted a portion of Fusfeld's will that showed the building's sale proceeds would go to local charities and (2) refused to allow Manson to introduce a letter from the Estate's attorney contending the building was not vacant at the time it burned.

¶ 2. We determine the trial court did not err by determining Manson had a duty to inform the Estate of the vacancy clause and by further clarifying the extent of the Estate's requested coverage. Further, there was sufficient evidence for the jury to conclude the duty had been triggered. In addition, although the trial court erred by admitting Fusfeld's will, we conclude the error was harmless. Finally, we determine the trial court did not err by refusing to admit the letter because it correctly concluded it was irrelevant. We therefore affirm the trial court's judgment.

## BACKGROUND

¶ 3. Millie Fusfeld died on March 17, 1999. Part of her estate included a building located in downtown Wausau that she and her husband, who died in 1984, had owned for over forty years. The Fusfelds had operated a clothing store in the building and later, a bridal store. Eventually, they closed their business and leased the building. At the time of Millie's death, the tenant was a business called the Bridal Boutique.

¶ 4. William Poluk, Millie's brother, was appointed the personal representative of her estate. Poluk lived in Mississippi, where Millie was also living at the time of her death. Patricia Pagel, a Wausau resident and longtime employee of the Fusfelds, took care of Millie's business affairs in Wausau after Millie moved to Mis-

sissippi. One of her responsibilities was arranging the building's insurance coverage and paying the premiums.

¶ 5. The Fusfelds had purchased the building's fire and liability insurance through Manson for more than twenty years before Millie's death. In 1989, Manson obtained the building's policy from Traveler's Property Casualty Insurance Company. The policy was renewed annually and limits increased based on inflation. A clause excluded coverage for losses if the building was vacant for sixty days prior to the loss. Pagel had paid the annual premium for at least five years before Millie's death. She did not change the coverage during these five years, and Millie did not ask her to.

¶ 6. After Millie's death, the Estate placed the building for sale. Poluk retained Pagel to assist him with the estate, essentially continuing her duties involving the building. The Estate offered the Bridal Boutique a right of first refusal on the building, which it declined, and the Bridal Boutique said it planned to close the business at the end of October 1999. Although the tenant planned to have its property out of the building by then, it requested a few extra weeks to remove its merchandise, which the Estate allowed.

¶ 7. Pagel received the policy's renewal notice in November 1999. The Estate's attorneys suggested she look into establishing month-to-month coverage so the coverage could be easily terminated when the building was sold. At trial, Pagel said she called Manson to make this inquiry and spoke with a representative named Sharon. During the conversation, Pagel told Sharon the building was being sold and the tenant was in the process of leaving. When she requested month-to-month coverage, Pagel said Sharon told her she should pay the entire premium and when the sale closed, the

Estate would receive a pro rata refund. Pagel testified Sharon told her the building would be covered.

¶ 8.　In February 2000 a fire destroyed the building. Traveler's denied coverage based on the vacancy clause. The Estate brought suit, challenging the denial and alleging negligence and misrepresentation by Manson. It also brought suit against General Insurance, Manson's omissions and errors insurer. After initial discovery, Traveler's moved for summary judgment based on the vacancy clause, and the trial court granted the motion, determining there was no dispute the building was vacant for sixty days before the fire.

¶ 9.　Manson also moved for summary judgment, contending it owed no duty to the Estate to inquire further and determine whether the building needed coverage in the event of a vacancy. The trial court denied the motion, concluding a duty existed because it was alleged Pagel informed Manson of the potential vacancy. At trial, the parties disputed whether Pagel's conversation with Sharon ever took place. In addition to Pagel's testimony, the Estate offered a note she had written memorializing the conversation. The note did not contain a reference to any discussion about vacancy. The agency's only employee named Sharon said she did not recall speaking with Pagel, nor did the policy's file show any record of a telephone conversation with Pagel.

¶ 10.　The Estate also introduced Millie's will and had Pagel read the clause disposing of the proceeds of the building's sale. The will provided the proceeds would fund two scholarships, one for the nursing program at a technical college and the other for a music scholarship at a local conservatory. Manson brought a motion in limine seeking to preclude this testimony and renewed its objection at trial, arguing the evidence was

732

irrelevant and prejudicial. The court denied the motion and the subsequent objection.

¶ 11. Manson also sought to admit a letter from the Estate's attorney while cross-examining the Estate's expert. The letter was to Traveler's and maintained the building was not vacant at the time of the fire. Manson sought to use it to impeach the witness, who claimed there was no question the building was vacant. The trial court denied the request because the summary judgment affidavits had established that the building was vacant at the time of the fire.

¶ 12. Although the Estate requested instructions on misrepresentation and negligence, the court only instructed the jury on negligence. The jury found Manson and Pagel causally negligent and apportioned the negligence ninety-nine percent to Manson and one percent to Pagel. Prior to trial, the parties had stipulated to the Estate's damages. Manson filed post-trial motions, all of which the court denied. Manson now appeals.

## DISCUSSION

*A. Duty of Insurance Agency*

■■■

¶ 13. We first address Manson's contention it owed no duty to the Estate. In order to sustain a claim for negligence, a plaintiff must show a duty owed by the defendant. *Lenz Sales & Serv. v. Wilson Mut. Ins. Co.*, 175 Wis. 2d 249, 254, 499 N.W.2d 229 (Ct. App. 1993). The question of an insurance agent's duty to an insured presents an issue of law we decide de novo. *Id.* An insurance agent has the duty to act in good faith and carry out the insured's instructions. *Nelson v. Davidson*, 155 Wis. 2d 674, 681–82, 456 N.W.2d 343 (1990).

This duty does not, however, impose the affirmative obligation, absent special circumstances, to advise a client regarding the availability or adequacy of coverage. *Id.* at 685.

¶ 14. Here, the trial court determined that if Pagel did inform Manson that the building's tenant was vacating, then Manson had a duty to inquire further in order to provide coverage for the building, as Pagel had requested. The court reasoned because Pagel sought coverage for the building until it was sold, and because Manson should have considered the possibility the building would be vacant for at least sixty days before the sale, Manson should have informed Pagel the current policy could be inadequate and should have asked for more information from Pagel. We agree. Pagel testified that in her conversation with Sharon, she requested coverage for the building until it was sold and said the building's tenant would be leaving during this time. If this conversation took place, Manson, with knowledge of the vacancy clause, should have asked Pagel whether the building would be vacant when the tenant left and should have asked other questions about the particular circumstances in order to obtain adequate coverage for the building.[1]

¶ 15. Manson relies on several cases to support its argument that it had no duty to alert Pagel to the vacancy clause. Most notably, it points to our supreme court's decision in *Sprangers v. Gateway Ins. Co.*, 182

[1] At trial, the parties disputed whether Pagel ever called Sharon and what Pagel said if she did. In part B of this opinion, we determine there was sufficient evidence for the jury to find Pagel told Sharon the building was being sold and the Bridal Boutique was leaving. For the purpose of determining Manson's duty to the Estate, we will assume Pagel told Sharon this information in their conversation.

Wis. 2d 521, 514 N.W.2d 1 (1994). In *Sprangers*, the court determined an insurance company had no duty to inform the insured, a VFW post, of the policy's liability exclusion for insureds "in the business of selling alcoholic . . . beverages." *Id.* at 527–28, 548. The court, applying the law of insurance agent liability, ruled the insurer had no duty to inform the post of the exemption because it was a common clause in liability contracts and the VFW, as a tavern operator, should have been aware of this. *Id.* at 547–48. The insurer, the court held, had no duty to anticipate "what liabilities the VFW expected a policy to cover or to identify which exclusions in the policy the VFW may have deemed important." *Id.* at 548. Similarly, Manson argues it has no duty to anticipate what coverage the Estate expected.

¶ 16. Here, Pagel sought continued coverage for the building. Her comment that the tenant was leaving should have alerted Manson that the vacancy clause might then exempt the building from coverage. From this, Manson would have known what Pagel expected the policy to cover and what exclusions she deemed important. This knowledge of the insured's desires is what is missing from *Sprangers* and is why no duty was imposed there.

¶ 17. Nor do we find support for Manson's position in the other Wisconsin cases it cites. For instance, in *Nelson*, the supreme court determined there was no obligation for an insurance agent to inform insureds about the availability of uninsured motorist coverage. *Nelson*, 155 Wis. 2d at 685. In that case, the plaintiff allegedly requested the "best coverage." *Id.* at 684. She did not, however, show that at the time she made the request, her insurer offered UM coverage or that she wanted her coverage to continue being the "best" throughout the time she insured with the company. *Id.*

735

at 684–85. Here, Pagel told Manson she needed coverage and the building's tenant was leaving. This information created Manson's obligation to make a further inquiry so Manson could determine whether the vacancy clause would be triggered. Unlike *Nelson*, where the insureds never said anything suggesting they might want UM coverage, here Manson had knowledge about the insured's situation that required further inquiry.

¶ 18. Manson also relies on our decision in *Lenz*. There, we determined an insurance agent had no duty to advise insureds to seek higher coverage. *Lenz*, 175 Wis. 2d at 257. In *Lenz*, the insureds bought a policy for the replacement value of their store, which at the time was $18,500. When their store was destroyed several years later, it was still insured for that amount, but valued much higher. *Id.* at 253. The insureds argued their agent had a duty to advise them to increase their amount of coverage based on the value of their store. *Id.* at 254. We disagreed, and held the agent complied with what the insureds had requested, a policy for the replacement value of their store. *Id.* The focus of *Lenz* is that the agent did exactly what the insureds asked him to do, based on the information presented. Here, Manson should have made a further inquiry based on the information Pagel offered and the existence of the vacancy clause.

¶ 19. Finally, in *Lisa's Style Shop v. Hagen Ins. Agency*, 181 Wis. 2d 565, 511 N.W.2d 849 (1994), the supreme court determined an insurance agent had no duty to advise the insured to increase its coverage limits. In that case, the agent found a less expensive policy offering the same coverage and switched without telling the insured. *Id.* at 575–76. The new policy offered a peak season endorsement allowing the insured

to collect an additional twenty-five percent above the policy limits if the insured's inventory was damaged at those times of the year when the inventory was at its peak. *Id.* at 570. In order to take advantage of this, however, the insured had to insure its entire inventory for its full value. *Id.* Under the previous policy, the insured had $36,000 in coverage, less than the inventory's value, and this is what the agent obtained under the new policy as well. *Id.* The insured argued the agent should have informed her of the endorsement and advised her to increase her policy. *Id.* at 574. The supreme court disagreed, concluding the agent had only done what the insured had asked, obtain $36,000 in coverage. *Id.* at 576–77. Again, the focus of *Lisa's Style Shop* is that the agent did exactly what he was asked. What distinguishes *Lisa's Style Shop*, *Lenz*, and *Nelson*, is the information Pagel provided. Pagel wanted to continue coverage on the building until it was sold, and told Manson the tenant was leaving. This, along with Manson's knowledge of the vacancy clause, created an obligation for further inquiry. Because Manson did not make this inquiry, it breached its duty to the Estate.

¶ 20. We note our approach is consistent with that of Illinois. In *National Blvd. Bank v. Brokerage Res., Inc.*, 356 N.E.2d 988 (Ill. App. 1976), the Illinois Court of Appeals held that an insurance agent had a duty to secure a vacancy endorsement on a policy insuring a building being remodeled. *Id.* at 989. There, the insureds informed their agent they were planning on remodeling their apartment building, and the agent obtained coverage. *Id.* The building burned down and the insurers denied coverage based on the policy's vacancy provisions. *Id.* Although the parties disputed whether the insureds told the agent the building would be vacant, the court determined the issue was irrel-

737

evant because whether the building would be vacant was material to the insurance risk and the agent had a duty to inquire. *Id.* at 990–91. Although learning a building is being remodeled arguably alerts an insurance agent to the possibility of vacancy under any circumstances, we are satisfied in this case that hearing the building was being sold and the tenant was leaving should have alerted Manson to the possibility of vacancy as well.

¶ 21. Manson also argues the conversation between Pagel and Sharon, if it happened, was insufficient to establish a duty. Pagel told Sharon the tenant would be leaving prior to the end of November, the building was going to be placed for sale, and the Estate wanted the building insured. This information, along with the knowledge the policy had a vacancy clause, is what triggers the duty. Upon hearing the tenant was leaving, Manson should have inquired whether the building would be vacant for more than sixty days prior to being sold, and explained the consequences to Pagel.

¶ 22. Manson argues imposing a duty based on the information Pagel provided violates public policy. The question of whether a duty exists is essentially a policy determination. *Nelson*, 155 Wis. 2d at 679. Manson argues an insurance agent should not be expected to take on the role of real estate agent and inquire into all the potential occupancy conditions that could affect coverage. It contends the information Pagel told Sharon did not alert Manson the building would be vacant, but merely that a tenant was moving out. Manson argues by establishing this duty, an insurance agent would be forced to investigate all possible leaseholds through lengthy and costly record searches.

¶ 23. This is not our holding. An insurance agent's duty is to obtain the insurance sought by the insured. When Pagel told Sharon the Estate wanted coverage until the building was sold and that the tenant was leaving, this should have raised a red flag because of the existence of the vacancy clause, and Manson should have inquired further. While we do not expect insurance agents to be clairvoyant, when they are presented with information suggesting an exemption clause might be triggered in a policy being renewed, they have a duty to inquire further. To hold otherwise would be to absolve the agent of their duty to obtain the insurance requested by the insured.

## B. Sufficiency of the Evidence

¶ 24. Manson next argues the trial court erred by not granting his motion after trial challenging the sufficiency of the evidence. Even if a duty exists, Manson argues, the evidence did not establish a violation. We review a trial court's decision on a motion challenging the sufficiency of the evidence de novo, applying the same standards. *See Richards v. Mendivil*, 200 Wis. 2d 665, 670, 548 N.W.2d 85 (Ct. App. 1996). The test for determining the sufficiency of the evidence is set forth in WIS. STAT. § 805.14(1).[2] We must first consider all credible evidence and all reasonable inferences that can be made from it in the light most favorable to the party against whom the motion is made. If, after this examination, no credible evidence exists to sustain the finding, we must overturn it. *Richards*, 200 Wis. 2d at 670.

_____

[2] All statutory references are to the 1999–2000 version unless stated otherwise.

¶ 25. Here, Manson argues Pagel's testimony did not contain adequate information to trigger the duty. Manson contends the evidence establishing what Pagel said to Sharon is short on details, specifically, Pagel not giving the actual date of the vacancy, not mentioning the building was for sale, and not using the words tenant and vacant. Pagel's direct examination testimony regarding the contents of the telephone call was:

Q: What did you say to Sharon?

A: I told Sharon that the Bridal Boutique was – quit business at the end of October, and that the building was in the process of being sold, and that they were in the process of moving out their merchandise, and I wanted to know if I would be covered, or if she had a month-to-month insurance policy that would be covered for us.

Q: Let's talk about that month-to-month inquiry that you made. What did you say to her in that regard?

A: That the building was in the process of being sold and, well, I didn't know when. And rather than paying it for the full year premium, if it was possible that there was a premium, that that would be just for a month-to-month basis, if they had anything like that.

. . . .

Q: Do you remember anything else that you said to Sharon during that conversation?

A: No. She just answered my questions, really.

Q: Did you ask her if you would be covered?

A: Yes.

Q: If you paid the full year premium?

A: Yes.

Q: And what did she say?

A: She said yes, that we would . . . .

¶ 26. Pagel also produced a note memorializing the phone conversation. We determine this note and the description of the phone conversation properly allowed the jury to conclude Manson failed to use reasonable skill and care when putting the coverage into effect. *See* Wis JI—Civil 1023.6. Manson argues Pagel was required to give the exact details for the duty to be triggered. The agent's duty, however, is to inquire once the insured reveals information that could affect a coverage exclusion. Here, Pagel testified she told Sharon the building was for sale, the tenant was in the process of leaving, and she wanted the building insured. If the jury accepted Pagel's testimony, then it could have properly determined Manson breached its duty.

¶ 27. In addition, the testimony of the Estate's expert, Leroy Utschig, supports the jury's verdict. Utschig testified Pagel's informing Manson the building was going to be sold and the tenant was leaving created a duty for Manson to inquire further to determine if the building would actually be vacant or to secure additional coverage for the insured. Manson's expert said Pagel had to have been more specific in her conversation to trigger a duty to inquire. The weight and credibility given to these experts is an issue solely for the jury, as is its resolution of the information Pagel communicated to Manson. *See Reiman Assocs., Inc. v. R/A Adver., Inc.*, 102 Wis. 2d 305, 318, 306 N.W.2d 292

741

(Ct. App. 1981). If the jury accepted Pagel's testimony, it could have concluded Pagel gave enough information to trigger Manson's duty.

## C. Evidentiary Issues

¶ 28. Finally, we address Manson's claim the trial court erred when it admitted portions of Millie's will and when it refused to admit the letter from the Estate's counsel to Traveler's. We review a trial court's decision to admit or exclude evidence under an erroneous exercise of discretion standard. *Morden v. Continental AG*, 2000 WI 51, ¶ 81, 235 Wis. 2d 325, 611 N.W.2d 659. We will affirm the trial court's decision if the court examined the relevant facts, applied a proper legal standard and reached a reasonable conclusion using a demonstrated rational process. *Martindale v. Ripp*, 2001 WI 113, ¶ 28, 246 Wis. 2d 67, 629 N.W. 2d 698.

¶ 29. We first address the will's admission. The testimony came in through Pagel, who read part of the will. Manson objected to the testimony prior to the trial and renewed its objection when Pagel testified. The Estate offered the testimony as evidence of Pagel's credibility, arguing because she would not receive anything under the will, her testimony should be more believable. Manson argued the evidence's prejudice far outweighed its value in probing Pagel's credibility because the jury would find out any damages awarded would all go to charity if the Estate won.

¶ 30. Ruling on Manson's motion, the court said:

Anyway, then the other thing is that we were talking at the final pretrial about the fact that Pat Pagel who is the party here who has stated that she called Manson Insurance Agency, or whatever did happen,

and the plaintiff wants to show for credibility purposes that she was not, and is not a beneficiary of the will. Mr. Olson objects to the will going in because the will actually shows that all of the proceeds of the will and beneficiaries are basically charities.

And there again, my opinion is to let the will go in, because I think that even though the beneficiaries are not involved in the lawsuit, the plaintiff is the personal representative of the estate, and it's the personal representative's job by law to gather all of the assets for the estate to the best of his ability. And therefore, he could be sued by the beneficiaries. So he's got to do it. That's his recommendation.

¶ 31. We agree with Manson and conclude the trial court erroneously exercised its discretion by admitting the will. Manson argued admitting the will would be prejudicial. The proper legal standard, then, is for the court to balance the will's probative value and its prejudicial impact pursuant to WIS. STAT. § 904.03. The record shows the court did not engage in this balancing and therefore erroneously exercised its discretion in admitting the will.

¶ 32. Nonetheless, we conclude the error was harmless. Under a harmless error analysis, we will reverse only where there is a reasonable possibility that the error contributed to the final result. *State v. Britt*, 203 Wis. 2d 25, 41, 553 N.W.2d 528 (Ct. App. 1996). In making this determination, we weigh the effect of the inadmissible evidence against the totality of the credible evidence supporting the verdict. *Id.* An error is harmless if there is no reasonable possibility that the

error affected the outcome of the trial. *State v. Koller*, 2001 WI App 253, ¶ 62, 248 Wis. 2d 259, 635 N.W.2d 838.

¶ 33. Most of the testimony in this case involved the existence and the contents of Pagel's telephone call and testimony from several insurance agents regarding their professional duties and standards of care. While much of this was disputed, there is enough evidence to support the jury's verdict. We cannot say there is a reasonable possibility the error affected the jury's verdict. The jury did not know the amount of money at stake, and our review of the record does not disclose any attempt by the Estate to argue the jury should decide in the Estate's favor to benefit the charities. Instead, the record reflects the Estate only used the will in an attempt to bolster Pagel's credibility. Further, we note Manson rejected the trial court's offer of a limiting instruction prior to the trial. Any prejudice Manson may have suffered was greatly outweighed by the evidence supporting the verdict.

¶ 34. Manson also argues it should have been allowed to introduce a letter from the Estate's attorneys to Traveler's in which the attorneys contested Traveler's claim the building was vacant. The letter had been sent after the Estate brought suit, but prior to the summary judgment motions, and contested Traveler's denial of coverage. The trial court refused to admit the letter at trial, determining it was irrelevant because the court had determined, as a matter of law, that the building was vacant when it burned. We agree.

¶ 35. Manson sought to introduce the letter to impeach the Estate's liability expert, who testified the building's vacancy was not an issue, saying "everybody accepted the building was vacant." Manson argued the

744

letter showed it was an issue. The witness's testimony, however, was that Traveler's and Manson had always contended the building was vacant, not that all the parties had agreed. His testimony focused on an insurance agent's standard of care, and his statement was part of that discussion. The letter, as the court noted, was part of the Estate's challenge to Traveler's coverage denial, and would not be relevant to impeach the witness regarding his opinion of an insurance agent's standard of care. The trial court properly excluded the letter.

*By the Court.*—Judgment affirmed.