Top Hat, Inc. d/b/a Access Medical Transit, Plaintiff-Respondent,
v.
Donald W. Moen, Defendant-Appellant.
No. 2004AP362.
Court of Appeals of Wisconsin.
Opinion Filed: April 28, 2005.
Before Dykman, Vergeront and Higginbotham, JJ.
¶ 1 DYKMAN, J.
Donald Moen appeals from an order denying his postconviction motion on a jury verdict requiring him to pay Top Hat, Inc., $49,219.69 in damages, attorney fees and costs for specialized motor vehicle (SMV) transportation services that Top Hat, then doing business as Access Medical, Inc., provided to his disabled daughter, Darlene. Moen contends the evidence was insufficient to support the jury's finding that he was not entitled to civil immunity as a guardian under WIS. STAT. § 880.39 (2003-2004).[1] He also appeals from a trial court ruling excluding from evidence testimony regarding settlement discussions between Access and the State, and evidence supporting allegations that Access was contributorily negligent.[2] Finally, he challenges the amount of the award, contending the record does not support the imposition of punitive damages, and that the jury's verdict on compensatory damages reflected passion and prejudice.
¶ 2 Following the supreme court's recent decisions in Strenke v. Hogner, 2005 WI 25, ___ Wis. 2d ___, 694 N.W.2d 296 (Wis. Mar. 18, 2005) (No. 03-2527), and Wischer v. Mitsubishi Heavy Industries America, Inc., 2005 WI 26, ___ Wis. 2d ___, 694 N.W.2d 320 (Wis. Mar. 18, 2005 (Nos. 01-0724, 01-1031 and 01-2486), we affirm the award of punitive damages. However, we conclude that the jury's compensatory damages award of $31,250 was excessive, and therefore reduce the award to $24,299.50, with an option to the plaintiff to request a new trial on damages. We affirm on the remaining issues.

BACKGROUND
¶ 3 Donald Moen is the guardian of his forty-seven year old daughter, Darlene Moen, who is severely mentally and physically challenged. Darlene received services from Riverfront, Inc., a facility that provides vocational training and social activities for disabled persons. La Crosse County provides transportation to qualified persons, which would include Darlene, through Laidlaw. Darlene tried Laidlaw, but Donald Moen was not satisfied with this provider, and contacted Access Medical to inquire about hiring them to transport Darlene. Moen spoke with Beverly Scott, president of Access Medical, who told him the cost of the service. Moen testified that he considered the amount to be "more than [he] could afford."
¶ 4 Scott informed Moen that Darlene would be eligible for State Medical Assistance (MA) coverage for SMV transportation services if she was receiving a medically necessary, MA-billed service at Riverfront. Moen told Scott that Darlene was receiving speech therapy at Riverfront from therapist Vicki Monk. Scott later contacted MA and Monk, who both confirmed that speech therapy was a medically necessary, MA-covered service and was being billed to MA.
¶ 5 In March 1996, Access began transporting Darlene to and from Riverfront. On June 18 or 19, Vicki Monk informed Moen that Darlene's speech therapy had ended, and that Darlene was no longer eligible to receive MA coverage for transportation services. A caseworker from La Crosse County Human Services, Jackie Newcomb, also informed Moen multiple times that Darlene was no longer qualified to receive the MA transportation benefit. In July 1996, Newcomb sent Moen a letter informing him that
[a]s Darlene is no longer receiving speech therapy at Riverfront, Medical Assistance will no longer fund Darlene's transportation to and from Riverfront. Should you wish to utilize Laidlaw, please contact me and I will make a referral. To my knowledge, the County continues to have funding available for this service.
¶ 6 Newcomb's case management log records one conversation dated January 3, 1997:
Don brought up transportation as I had not included it on [illegible]. He reports satisfaction [with] Access altho admits it's expensive as he receives statements reflecting transp. costs of abt. $70/day. Again informed Don MA should not be used to fund this as Darlene is not going for MA approved services. Don reports knowledge that he may go to jail, have to pay the $ back & or receive a fine as a result of continuing to use MA card for the transp ....
Moen testified that he did not believe Monk or Newcomb when they informed him that Access' service would not be covered by MA because "they had nothing to do with transportation."
¶ 7 A 1998 state audit discovered that Darlene was not eligible for the MA transportation benefit. Darlene's use of Access' service ended in September 1998. Access agreed to return $16,510 in MA reimbursements to the Wisconsin Department of Health and Family Services (DHFS) for the non-qualifying services provided to Darlene. Access Medical sued Moen for indemnification of the lost MA reimbursements, attorney fees for the DHFS proceedings, costs and punitive damages. It contended that Moen had intentionally misrepresented to it Darlene's eligibility for medical assistance coverage.
¶ 8 Prior to trial, Access filed a motion in limine to exclude certain evidence. The trial court granted the motion, prohibiting reference at trial to: (1) the settlement agreement reached between Access and DHFS regarding services provided to Darlene Moen; (2) any changes made after September 1998 in Access' procedures for verifying clients' MA eligibility; (3) any changes made after September 1998 in state guidelines in verifying MA eligibility for Specialized Motor Vehicle (SMV) transportation services; (4) any alleged contributory negligence of Access in not taking additional steps to verify Darlene Moen's eligibility for MA-covered SMV transportation services.
¶ 9 At trial, the jury awarded Access $31,250 in compensatory damages and $15,000 in punitive damages. The trial court denied a postverdict motion by Moen challenging the jury's verdict and requesting a new trial. Moen appeals.

DISCUSSION

Civil Immunity
¶ 10 Moen challenges the trial court's postverdict ruling that sufficient evidence could be found to support the jury's determination that he was not entitled to civil immunity under WIS. STAT. § 880.39. A trial court will grant a motion contesting the sufficiency of the evidence supporting a verdict only when there is no credible evidence to sustain the verdict. WIS. STAT. § 805.14(1). An appellate court reviews the trial court's decision on a motion challenging the evidentiary basis of the verdict independent of the trial court, applying the same methodology as the trial court. See Richards v. Mendivil, 200 Wis. 2d 665, 670, 548 N.W.2d 85 (Ct. App. 1996).
¶ 11 WISCONSIN STAT. § 880.39 provides that
Any guardian of [an incompetent person] is immune from civil liability for his or her acts or omissions in performing the duties of the guardianship if he or she performs the duties in good faith, in the best interests of the ward and with the degree of diligence and prudence that an ordinarily prudent person exercises in his or her own affairs.
Moen contends that he is entitled to guardianship civil immunity because he performed his duties as a guardian in good faith and in Darlene's best interests. He points to his testimony that he arranged for Darlene to attend Riverside to improve her education and skills. He also argues that his choice of Access to transport Darlene to and from Riverside was made in her best interest because their drivers "went out of their way to take good care of Darlene" when "nobody else was helping her."
¶ 12 We conclude there was more than sufficient evidence was produced to support the jury's decision that Moen was not entitled to civil immunity. The testimony of Vicki Monk and Jackie Newcomb that they repeatedly informed Moen that Darlene was not eligible for MA coverage of Access' transportation service was an adequate basis on which the jury could find that Moen's actions placed him outside of the protection of WIS. STAT. § 880.39. He responds that this testimony only "related to payment of the services, not whether the transportation Mr. Moen was using was in Darlene's best interest." We reject this view of Darlene's best interest, which could be used to justify any imprudent or illegal means to secure payment of services that might benefit Darlene. Moen exposed himself to civil (if not criminal) liability to obtain a service he testified that he believed to cost "more than [he] could afford." Moreover, WIS. STAT. § 880.39 requires that a guardian exercise the "degree of ... prudence that an ordinarily prudent person exercises in his or her own affairs." If, as the evidence supporting the jury's verdict shows, Moen intentionally misrepresented Darlene's MA eligibility for Access' transportation service, he did not act prudently. We therefore affirm the trial court's dismissal of Moen's challenge of the evidentiary basis for the jury's answer as to civil immunity.

Settlement Negotiations
¶ 13 Moen challenges the trial court's decision to exclude evidence regarding settlement negotiations between DHFS and Access. A trial court's decision to admit or exclude evidence lies within its discretion. Poluk v. J.N. Manson Agency, Inc., 2002 WI App 286, ¶ 28, 258 Wis. 2d 725, 653 N.W.2d 905. (citation omitted). We will affirm the trial court's ruling if the court examined the relevant facts, applied the appropriate legal standard and reached a reasonable conclusion through a rational process. Id. (citation omitted).
¶ 14 Moen asserts that he sought admission of evidence of the settlement negotiations to distinguish the value of services Access provided to two other recipients who were involved in this proceeding from the cost of Darlene's services. Moen also asserts that inclusion of this evidence would not have been prejudicial to Access because Access presented facts concerning the settlement negotiations at trial. Moen has not included in the appellate record the transcript of the hearing at which this issue was decided. However, at trial the court explained it excluded the evidence for its potential to prejudice and confuse the jury,[3] citing WIS. STAT. § 904.03.[4] The court stated:
This is not going to be included. First of all, I have a question as to whether it's relevant or not. The fact that she doesn't have documentation is clear. The fact that there was transportation for days that should never have been provided to the child are also, for the ward are also clear. The amount is clear. It's stipulated to, and I don't believe that under those circumstances, given the questions that the jury has to answer that this is relevant. To the degree that it is relevant, I think that it is properly excluded under Section 904.03, in that I think it leads to the danger of unfair prejudice, confusion of issues, misleading the jury as to what the issues are that they have to resolve here.
¶ 15 We conclude that the exclusion of the evidence of settlement negotiations was a proper exercise of the trial court's discretion. Prior to trial, Moen stipulated that the portion of Access' settlement for services provided to Darlene was $16,510. His claim that the settlement evidence was required to calculate the value of Darlene's services is therefore without merit. Moreover, Access' counsel averred that Access settled the amount paid for services to the other two recipients at the beginning of the administrative proceeding, and that the attorney fees in that proceeding related to Darlene's transportation alone.
¶ 16 Further, it is reasonable to conclude that admission of evidence of settlement would have been duplicative and confusing to the jury. As the trial court noted, the entry of this evidence could have resulted in unfair prejudice by "misleading the jury as to what the issues [were] that they [had] to resolve ...." Specifically, the evidence may have produced facts to suggest that Access was contributorily negligent. The defense of contributory negligence was not available to Moen in this action, as we discuss below. To admit this evidence would have risked confusing the jury with unfairly prejudicial information that did not pertain to the issues to be decided.

Contributory Negligence
¶ 17 Moen challenges the trial court's decision to prohibit reference at trial to alleged contributory negligence by Access, and to exclude evidence that could be used to support a defense of contributory negligence by Access. Moen contends that Access had the duty to verify that Darlene was eligible for medical assistance and to inform him that she was required to be enrolled in an MA-covered program to be eligible for SMV transportation coverage. He asserts that if Access failed to execute these duties it should be held contributorily negligent for the damages it sustained.
¶ 18 The only cause of action brought by Access against Moen was for intentional misrepresentation. Contributory negligence is not a valid affirmative defense to a claim of intentional misrepresentation. Wisconsin courts have long held that when a plaintiff justifiably relies upon a defendant's misrepresentation, "[t]he plaintiff is viewed as being innocent" and is "under no obligation to do anything else to protect himself." Gauerke v. Rozga, 112 Wis. 2d 271, 282, 332 N.W.2d 804 (1983). Having determined that the trial court reached the proper legal conclusion in denying Moen the opportunity to raise a defense of contributory negligence, we conclude the trial court's subsequent exclusion of evidence offered to prove contributory negligence was a proper exercise of its discretion. See Poluk, 258 Wis. 2d 725, ¶ 28.

Punitive Damages
¶ 19 Moen contends that the trial court erred by submitting Access' claim for punitive damages to the jury. A trial court must determine as a matter of law that the evidence will support an award of punitive damages before submitting the question of punitive damages to the jury. Dorr v. Sacred Heart Hosp., 228 Wis. 2d 425, 454, 597 N.W.2d 462 (Ct. App. 1999) (citation omitted). We review the record de novo to determine whether the question of punitive damages should have been sent to the jury. Id. (citation omitted).
¶ 20 A plaintiff is entitled to punitive damages "if evidence is submitted showing that the defendant acted maliciously toward the plaintiff or in an intentional disregard of the rights of the plaintiff." WIS. STAT. § 895.85(3). In Wischer v. Mitsubishi Heavy Industries America, Inc., 2003 WI App 202, ¶ 5, 267 Wis. 2d 638, 673 N.W.2d 303, rev'd, 2005 WI 26, ___ Wis. 2d ___, 694 N.W.2d 320, (Wis. Mar 18, 2005) (Nos. 01-0724, 01-1031 and 01-2486), we construed the phrase "intentional disregard of the rights of the plaintiff" provided in § 895.85(3) "to require either an intent by a defendant to cause injury to the plaintiffs or knowledge that the defendant's conduct was practically certain to cause the accident or injury to the plaintiffs." Citing our decision in Wisher, Moen asserts that because a jury could not find that he intended to cause injury to Access, the issue of punitive damages was improperly submitted to the jury in this case.
¶ 21 Since the parties briefed this issue, the supreme court has reversed our interpretation of the statute in Wischer v. Mitsubishi Heavy Industries, 2005 WI 26, ___ Wis. 2d ___, 694 N.W.2d 320, (Wis. Mar. 18, 2005) (Nos. 01-0724, 01-1031 and 01-2486), and a companion case, Strenke v. Hogner, 2005 WI 25, ___ Wis. 2d ___, 694 N.W.2d 296, (Wis. Mar. 18, 2005) (No. 03-2527). The court explained:
[W]e disagree with the [court of appeals'] interpretation of WIS. STAT. § 895.85(3). The legislature did not intend an "intentional disregard of the rights of the plaintiff" to require "intent to cause injury to the plaintiff." Rather it reaffirmed the common-law principle that punitive damages can be premised on conduct that is a "disregard of rights."
Strenke, ___ Wis. 2d ___, ¶ 19.
¶ 22 Based on this interpretation of the statute in question, we conclude that the court properly submitted the issue of punitive damages to the jury. Considering the relevant facts, a jury could find that Moen's conduct disregarded the rights of Access. The Strenke court identified the rights courts have traditionally included in this analysis, and how courts have defined "disregard of rights":
Under the common law punitive damage cases, the word "rights" was used to mean just thatrights of the plaintiffs or others recognized by law. These can include, for example, such rights as property rights ....
A review of our common law reveals that the phrase "disregard of rights" described a type of conduct that involved an indifference on the defendant's part to the consequences of his or her actions. The phrase did not mean the harm or injury suffered. Rather it referred to conduct, which in turn resulted in the harm or injury suffered.
Strenke, ___ Wis. 2d ___, ¶¶ 30-31 (citations omitted). A jury could conclude that Moen intentionally disregarded the property rights of Access by misrepresenting to Access Darlene's eligibility for MA coverage of Access' services. Moen knew that MA was covering the cost of Darlene's transportation. As described earlier, the testimony of Monk and Newcomb provided a sufficient basis to conclude that Moen was aware that Darlene was not eligible for the MA transportation benefit. Based on these facts, a jury could conclude that Moen disregarded the property rights of Access by exposing them to the potential loss for the cost of services they provided to Darlene.
¶ 23 Moen also contends that evidence was not offered to show that his alleged conduct was directed at Access, and that under WIS. STAT. § 895.85(3) such evidence was necessary for punitive damages to have been put before the jury, citing Boomsma v. Star Transport, Inc., 202 F. Supp. 2d 869, 881 (E.D. Wis. 2002) ("[T]he thing which must be practically certain is not harm in the abstract, or even harm to a certain class of people ... but harm to the plaintiff.") However, Moen's contention no longer has a sound legal basis. The supreme court in Stenke and Wischer explicitly rejected the Boosma court's requirement of proof of harm to the specific plaintiff. Stenke, ___ Wis. 2d ___, ¶ 48. Stenke, which was before the court on certification to decide this very issue, quoted our certification petition "to illustrate the dramatic curtailment that the `particular plaintiff' rule would have on situations where punitive damages were always understood to play an important role":
Consider where a drug manufacturer publicly distributes a drug it knows is practically certain to cause harm. Even though the class of people who use the drugs are harmed and that the manufacturer knew this was practically certain to occur, the drug manufacturer could simply use the plain language of § 895.85(3)language [the court of appeals decision in] Wischer concluded was unambiguousto preclude liability, arguing that it did not intend or know there was a practical certainty that those particular plaintiffs who are seeking to recover punitive damages would be harmed. Also, consider where a person fires a gun into a crowd of people and injures a stranger. How could the person have awareness that it is practically certain he or she would cause injury to someone he or she never knew?
Strenke, ___ Wis. 2d ___, ¶ 47 (citation omitted). Applying the principle that laws should be interpreted reasonably to avoid absurd results, the Strenke court concluded: "It is doubtful that the legislature intended to afford greater protection to a defendant who intentionally disregarded the rights of a great many unspecified individuals than a defendant who intentionally disregarded the rights of one particular individual." Id., ¶ 48.
¶ 24 Moen finally contends that the award for punitive damages should be reversed because a home loan application that included information about the financial situation of his wife, Joan Moen, was improperly entered into evidence. As we explained earlier, we review a trial court's decision to exclude or admit evidence for an erroneous exercise of discretion. Poluk, 258 Wis. 2d 725, ¶ 28.
¶ 25 Moen asserts that his wife was not a party to the suit, and the wealth of a non-party may not be submitted to a jury for its consideration of punitive damages. See WIS. STAT. § 895.85(4)(a). However, WIS. STAT. § 766.55(2)(cm) provides that damage awards for torts committed during marriage "may be satisfied from the property of [the tortfeasor's] spouse that is not marital property and from that spouse's interest in marital property." Moreover, the court here did not admit the documents referenced in the loan application pertaining to Joan Moen's individual accounts, and it instructed the jury to disregard any information about Joan Moen's individual assets in rendering its verdict. We therefore conclude that the trial court's decision to admit this evidence was a proper exercise of its discretion.

Compensatory Damages
¶ 26 Finally, Moen contests the amount of the jury award for compensatory damages, $31,250. During closing arguments, Access' counsel requested that the jury award $24,299.50 in compensatory damages. This request included $16,510 in settlement costs paid to DHFS for Darlene's transportation services, and $7,789.50 in attorney fees associated with the administrative proceedings with the state. The trial court expressed some concern over the amount of the jury's award:
I did, in looking at this initially, have some reason to pause. I think that on the issue of compensatory damages, and clearly the numbers that were submitted to the jury were as [Moen's counsel] suggests, the $16,510, along with the additional sum for the attorney fees incurred in the collateral proceeding ....
Nonetheless, the trial court concluded that sufficient evidence supported the jury's conclusion, but did not point to any particular evidence supporting the finding. The court also suggested that the amount of damage in this case was "difficult[] [to] actually quantify...." We may not disturb a jury's award of damages if the record contains any credible evidence that fairly admits an inference supporting the jury's award. Giese v. Montgomery Ward, Inc., 111 Wis. 2d 392, 408, 331 N.W.2d 585 (1983).
¶ 27 Moen contends that the jury's award has no evidentiary basis. He asserts that damages, if warranted at all, were easily calculable$16,510 for Access' settlement with the State and $7,789.50 in attorney fees for that proceeding. He asserts that because damages were easily calculable, and the jury's award followed that calculation, the jury award was "perverse," and that he is therefore entitled to a new trial as to all issues, citing Nelson v. Fisher Well Drilling Co., 64 Wis. 2d 201, 210, 218 N.W.2d 489 (1974).
¶ 28 Access responds that the testimony of its president, Beverly Scott, showed that the jury could have concluded that the company was entitled to additional compensation because the litigation "forced its president to divert her attention from conducting company business." Access adds that "the jury also heard testimony regarding the resources that Access and its employees were forced to expend during its transportation of Darlene Moen."
¶ 29 We conclude that the evidence cited by Access as a basis for the jury's award does not support the nearly $7,000 surplus awarded to Access beyond its jury request. The amount of the DHFS settlement, $24,299.50, was precisely for the "resources that Access and its employees" used in transporting Darlene Moen. We therefore determine that the jury's award of $31,250 in compensatory damages was excessive, but not so "grossly exce[ssive]" as to be "perverse." Nelson, 64 Wis. 2d at 209; see also Herman by Warshafsky v. Milwaukee Children's Hosp., 121 Wis. 2d 531, 545, 361 N.W.2d 297 (Ct. App. 1984) ("Excessiveness, alone, is not enough to label a verdict perverse."). We conclude that a compensatory award of $24,299.50 is reasonable. Accordingly, we reverse the damages award and remand to the trial court with the direction that Moen have ten days to exercise the option to take judgment in the amounts approved in this opinion, or have a new trial on damages. See WIS. STAT. § 805.15(6)[5] and WIS. STAT. RULE 809.26. Because Moen has prevailed on this final issue, we reject Access' argument that Moen's appeal was frivolous and thus deny Access' request for attorney fees and costs. See WIS. STAT. RULE 809.25(3).
By the Court.  Order affirmed in part; reversed in part and cause remanded.
NOTES
[1] All references to the Wisconsin Statutes are to the 2003-04 version unless otherwise noted.
[2] Moen also appeals from the trial court's grant of a motion excluding from evidence certain Medical Assistance provider handbooks. Because the appellate record does not contain a transcript of the hearing at which the trial court explained its reasons for its ruling on this issue, we will assume that the record "supports every fact essential to sustain the trial court's exercise of discretion." State Bank of Hartland v. Arndt, 129 Wis. 2d 411, 423, 385 N.W.2d 219 (Ct. App. 1986). We therefore summarily affirm the trial court's exclusion of this evidence.
[3] Moen asserts that the trial court also excluded the settlement evidence under WIS. STAT. § 904.08, which prohibits admission of evidence of settlement negotiations. Though Access' motion in limine sought exclusion under WIS. STAT. § 904.08 in part, we find no support in the record for the view that the court based its ruling on § 904.08.
[4] WISCONSIN STAT. § 904.03 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.
[5] WISCONSIN STAT. § 805.15(6) provides:

Excessive or inadequate verdicts. If a trial court determines that a verdict is excessive or inadequate, not due to perversity or prejudice or as a result of error during trial (other than an error as to damages), the court shall determine the amount which as a matter of law is reasonable, and shall order a new trial on the issue of damages, unless within 10 days the party to whom the option is offered elects to accept judgment in the changed amount. If the option is not accepted, the time period for petitioning the court of appeals for leave to appeal the order for a new trial under ss. 808.03(2) and 809.50 commences on the last day of the option period.