In re the Commitment of Richard A. Brown:

State of Wisconsin, Petitioner-Respondent,

v.

Richard A. Brown,
Respondent-Appellant-Petitioner.

Supreme Court

*No. 03–1419. Oral argument December 13, 2004.—Decided
March 22, 2005.*

2005 WI 29

(Also reported in 693 N.W.2d 715.)

For the respondent-appellant-petitioner there were briefs and oral argument by *Steven P. Weiss,* assistant state public defender.

For the petitioner-respondent the cause was argued by *Sally L. Wellman,* assistant attorney general, with whom on the brief was *Peggy A. Lautenschlager,* attorney general.

¶ 1. SHIRLEY S. ABRAHAMSON, C.J. This is a review of a published decision of the court of appeals affirming an order of the Circuit Court for Milwaukee County, John Franke, Judge.[1]

¶ 2. The circuit court's order denied Richard A. Brown's petition for supervised release under Wis. Stat. § 980.08(4) (2001–02).[2] Brown had been committed as a sexually violent person pursuant to chapter 980 in 1998.

¶ 3. The circuit court concluded that the State proved by clear and convincing evidence that "it remains much more likely than not that [Brown] would reoffend at some point over the course of the rest of his life even while supervised in the community."

¶ 4. The court of appeals affirmed the circuit court's order denying Brown's petition for supervised release.[3]

¶ 5. Two issues are presented. First, what standard of appellate court review applies to a circuit court's order denying a petition for supervised release under Wis. Stat. § 980.08(4)? We conclude that a reviewing court undertakes independent review of the record under the sufficiency of the evidence standard of review.

¶ 6. Second, is the circuit court order denying Brown's petition for supervised release supported by the evidence? We conclude, as a matter of law, that the circuit court order denying Brown's petition for supervised release is not supported by evidence sufficient to meet the clear and convincing evidence standard that it

---

[1] *State v. Brown,* 2004 WI App 33, 269 Wis. 2d 750, 676 N.W.2d 555.

[2] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise indicated.

[3] *Brown,* 269 Wis. 2d 750, ¶ 16.

is much more likely than not that Brown will engage in acts of sexual violence if he is not continued in institutional care. We therefore reverse the decision of the court of appeals and remand the cause to the circuit court with instructions to notify the Department of Health and Family Services that it should submit to the circuit court, pursuant to Wis. Stat. § 980.08(5), a plan for Brown's supervised release.[4]

## I

¶ 7. In determining the validity of the circuit court order denying Brown's petition for supervised release, we must first establish the appropriate standard of appellate review of such a circuit court order. The three standards of appellate review of circuit court decisions have been stated numerous times, although case law has articulated sub-principles and different ways of stating the standards of review: (1) A reviewing court will not overturn findings of fact unless clearly erroneous. (2) A reviewing court will sustain a discretionary decision that is the product of a rational mental process by which the facts of record and law relied upon are stated and are considered together for the purpose of achieving a reasoned and reasonable

---

[4] Wisconsin Stat. § 980.08(5) reads in part as follows:

If the court finds that the person is appropriate for supervised release, the court shall notify the department. The department shall make its best effort to arrange for placement of the person in a residential facility or dwelling that is in the person's county of residence .... The department and the county department ... in the county of residence of the person shall prepare a plan that identifies the treatment and services, if any, that the person will receive in the community. The plan shall address the person's need, if any, for supervision, counseling, medication, community support services, residential services, vocational services, and alcohol ... treatment. ...

determination. (3) A reviewing court will decide questions of law independently of the circuit court but benefiting from its analysis.

[1, 2]

¶ 8. The issue presented by the parties in the instant case is whether a circuit court's denial of a chapter 980 petition for supervised release should be classified as a determination of a question of law or as an exercise of circuit court discretion. Whether a person is much more likely than not to engage in acts of sexual violence if the person is not continued in institutional care is a question of fact. The very question of the appropriate standard of review is a question of law which this court decides independently of the circuit court and court of appeals but benefiting from the analyses of these courts.

¶ 9. We look first to Wis. Stat. § 980.08(4), the statute at issue, to determine whether it sets forth a standard of appellate review. It does not.

¶ 10. In the absence of an explicitly stated statutory standard of review, we examine the statute governing the circuit court's decisionmaking in the instant case. Wisconsin Stat. § 980.08(4) sets forth the circuit court's role in deciding a petition for supervised release as follows:

> The court shall grant the petition unless the state proves by clear and convincing evidence that the person is still a sexually violent person and that it is still substantially probable that the person will engage in acts of sexual violence if the person is not continued in institutional care. In making a decision under this subsection, the court may consider, without limitation because of enumeration, the nature and circumstances of the behavior that was the basis of the allegation in the [initial commitment] petition ... , the person's

mental history and present mental condition, where the person will live, how the person will support himself or herself and what arrangements are available to ensure that the person has access to and will participate in necessary treatment . . . .

██

¶ 11. According to Wis. Stat. § 980.08(4), the circuit court starts in the position of having to grant a petition for supervised release. The circuit court does not have to grant the petition if the State proves by clear and convincing evidence that the person is still a sexually violent person and that it is substantially probable that the person will engage in acts of sexual violence if the person is not continued in institutional care. "Substantially probable" means "much more likely than not."[5] The statute also sets forth four factors a circuit court may consider, along with other factors, in making its determination.

¶ 12. Thus, if the circuit court decides that the State has failed to meet its burden, the circuit court does not have any option: It "shall" grant Brown's petition for supervised release. If the circuit court decides, however, that the evidence is sufficient to prove the State's case by clear and convincing evidence, then the circuit court must deny Brown's petition.

¶ 13. Having reviewed the applicable statute, we next examine case law for guidance on the applicable standard of review in the instant case.

¶ 14. The court of appeals in the instant case characterized the circuit court's order under Wis. Stat. § 980.08(4) as a discretionary decision to be upheld "if it

---

[5] *State v. Curiel,* 227 Wis. 2d 389, 395, 415, 597 N.W.2d 697 (1999).

was based on a logical interpretation of the facts and a correct application of the proper legal standards."[6]

¶ 15. The State agrees with the court of appeals, arguing that the discretionary standard of review is consistent with the evaluative and predictive nature of the assessment the circuit court must make.

¶ 16. Brown contends, however, that the mandatory language of Wis. Stat. § 980.08(4), directing that the court "shall" grant supervised release unless the State meets its burden of proof, is irreconcilable with the notion that a circuit court exercise its discretion when it rules on a petition for supervised release. Brown urges that the standard of review is an independent review of a question of law. The State acknowledges that the standard of review might very well be review of a question of law.

¶ 17. Although several cases have some bearing on our decision about the proper standard of review in the present case, the cases do not provide careful analysis and in some cases the announced standard of review is not applied. We shall examine each of the cases.

¶ 18. In holding in the present case that a circuit court's denial of a chapter 980 petition for supervised release is a discretionary decision and is to be reviewed as such, the court of appeals relied solely on *State v. Seibert,* 220 Wis. 2d 308, 314, 582 N.W.2d 745 (Ct. App. 1998). *Seibert,* like the instant case, involves appellate review of a circuit court order denying a chapter 980 petition for supervised release. The court of appeals did not analyze or discuss the *Seibert* decision.

---

[6] *Brown,* 269 Wis. 2d 750, ¶ 16 (citing *State v. Seibert,* 220 Wis. 2d 308, 314, 582 N.W.2d 745 (Ct. App. 1998)).

¶ 19. On examination of *Seibert,* we conclude that it is not persuasive authority for the use of a discretionary standard of review in the instant case. In *Seibert* the court of appeals announced that the standard of review for a circuit court order denying a chapter 980 petition for supervised release is the same as that for a circuit court's initial determination of placement in a secure mental health facility or other facility or supervised release under Wis. Stat. § 980.06(2)(b) (1995–96).

¶ 20. The sole rationale in the *Seibert* case is that both §§ 980.06(2)(b) and 980.08(4) direct the circuit court to consider enumerated statutory factors in determining placement.

¶ 21. The *Seibert* court picked up on the similar wording of the two statutes but missed the difference. Under Wis. Stat. § 980.06(2)(b), after a circuit court or jury determines that the person is a sexually violent person under chapter 980, the circuit court determines whether the person shall be placed in institutional care in a secure mental health unit or facility or other facility or on supervised release. The statute enumerates various factors that might affect the circuit court's choice of placement. The statute does not establish a burden of proof for either the State or the chapter 980 person.

¶ 22. In contrast, under Wis. Stat. § 980.08(4), the statute directs the circuit court to grant the petition for supervised release. The statute places a burden on the State to prove by clear and convincing evidence that the circuit court should deny the petition. If the State fails to carry its burden, the petition is granted. While consideration of the various enumerated factors plays a role in the circuit court's decision whether to grant

supervised release, the question for a circuit court and a reviewing court is whether the State has carried its statutory burden of proof.

¶ 23. *Seibert* in turn relies on *State v. Keding,* 214 Wis. 2d 363, 367, 571 N.W.2d 450 (Ct. App. 1997), an initial chapter 980 placement case, for the proposition that a determination of the appropriate placement under Wis. Stat. § 980.06(2) is discretionary because it involves consideration of interrelated statutory factors.

¶ 24. *Keding* in turn merely cited, without any discussion, *State v. Cook,* 66 Wis. 2d 25, 224 N.W.2d 194 (1974), as support for its holding that a determination of the appropriate placement under Wis. Stat. § 980.06(2) is discretionary because it involved consideration of interrelated statutory factors.

¶ 25. *State v. Cook* is not a chapter 980 case. In *Cook,* the applicable statute provided that after being found not guilty by reason of mental disease or defect the defendant had the burden to prove he may be safely discharged or released without danger to himself or others, and that if the circuit court is so satisfied the circuit court shall order discharge or release on conditions as the court determines to be necessary.

¶ 26. Although the statute at issue in *Cook* placed a burden on the defendant to prove that he may safely be discharged or released without danger to himself or others,[7] the *Cook* court did not accept the defendant's argument that the circuit court's decision must be supported by the great weight and clear preponderance of the evidence.[8]

¶ 27. Rather, the *Cook* court analogized the circuit court's decision under the statute to a circuit

---

[7] *State v. Cook,* 66 Wis. 2d 25, 27 n.2, 224 N.W.2d 194 (1974).

[8] *Id.* at 28.

court's decision in sentencing and declared the decision to be a discretionary one. In both instances, stated the *Cook* court, the decision involves determining whether the defendant is a danger to himself or others.[9]

¶ 28. The statutes in the present case and *Seibert,* which relied on *Cook,* are different than the *Cook* statute. The *Cook* court considered it very significant that the statute in *Cook* used the word "satisfied," that is, the statute stated that the circuit court must be "satisfied" that the defendant may be safely released. It viewed the legislature as intending the circuit court's decision about safe release to be subjective and inherently discretionary.[10] Neither the word "satisfied" nor any other "subjective" word or phrase appears in § 980.08(4) governing the instant case and *Seibert.*

¶ 29. Unlike the not-guilty-by-reason-of-mental-disease-or-defect statute in *Cook,* which speaks of satisfying the circuit court, Wis. Stat. § 980.08(4) speaks of the State meeting its burden of proof. Whether a party has met its burden of proof appears to be a question of law.

¶ 30. The court of appeals decision in the instant case is not the only example of a court of appeals' citing to *Seibert* without examination of the underlying cases. In a recent court of appeals case, *State v. Wenk,* 2001 WI App 268, ¶ 6, 248 Wis. 2d 714, 637 N.W.2d 417, the court of appeals declared that the applicable standard of review for a circuit court's order denying a chapter 980 petition for conditional release of a not-guilty-by-

---

[9] *Id.* at 29. According to *Cook,* a reviewing court will sustain a circuit court's exercise of discretion if, "on the basis of the record and the rationale expressed, we can conclude that a judge could arrive at the decision in fact reached." *Id.* at 30.

[10] *Id.* at 29–30.

reason-of-insanity committee is unclear. After citing several cases (but not *Cook*),[11] the court of appeals simply announced, in conclusory fashion and without explanation, that it would "reaffirm the standard of review recently set forth in *State v. Seibert*," namely a discretionary standard of review.[12]

¶ 31. In sum, the case law is a cross-pollenated mish-mash. *Seibert* declares that the standard of review for a circuit court's order denying a chapter 980 petition for supervised release is erroneous exercise of discretion. *Seibert* relies on *Keding*, which, without discussion, relies on *Cook*. *Cook* loses its significance when *Wenk*, interpreting a *Cook*-like statute, acknowledges confusion about the standard of review, fails to cite *Cook*, and turns to *Seibert* as authority. Yet *Seibert* in effect relies on *Cook*. Under these circumstances the efficacy of *Seibert, Keding, Cook*, and *Wenk* as precedential or persuasive authority that the standard of review in the instant case is erroneous exercise of discretion is limited.

¶ 32. Brown challenges the erroneous exercise of discretion standard of review and argues for independent appellate court review. Brown relies on two different lines of cases, claiming that both support his position that a reviewing court independently examines

---

[11] The State's brief in *Wenk* pointed out that *State v. Gladney*, 120 Wis. 2d 486, 355 N.W.2d 547 (Ct. App. 1984), and *State v. Gebarski*, 90 Wis. 2d 754, 280 N.W.2d 672 (1979), require a sufficiency of the evidence standard of review, and that *Cook* and *Keding* require an erroneous exercise of discretion standard of review. The court of appeals merely acknowledged confusion in the cases and cited to the former cases. *State v. Wenk*, 2001 WI App 268, ¶ 6, 248 Wis. 2d 714, 637 N.W.2d 417.

[12] *State v. Wenk*, 248 Wis. 2d 714, ¶ 6.

as a question of law whether the State has met its legislatively imposed burden of proof that it is substantially probable that the chapter 980 person will engage in acts of sexual violence if the person is not continued in institutional care. Brown does not explain whether he views the lines of cases as requiring different analyses.

¶ 33. One line of cases is represented by *In re Guardianship of Cheryl F.,* 170 Wis. 2d 420, 489 N.W.2d 636 (Ct. App. 1992). Cheryl disputed the circuit court's appointment of a guardian of her person. The statute placed the burden on the county to establish by clear and convincing evidence that Cheryl was incompetent.[13] Incompetency was defined by statute to mean substantially incapable of managing her property or caring for herself, as determined by the circuit court.[14]

¶ 34. The court of appeals concluded in *Cheryl F.* that whether the evidence fufills a particular legal standard, namely incompetency in that case, is a question of law, citing *Nottelson v. DILHR,* 94 Wis. 2d 106, 116, 287 N.W.2d 763 (1980), and that questions of law are determined by a reviewing court without deference to the circuit court, citing *First National Leasing Corp. v. City of Madison,* 81 Wis. 2d 205, 208, 260 N.W.2d 251 (1977).[15] Both of these principles of law (and the cases cited to support them) have been oft-repeated and are well accepted.

---

[13] *In re Guardianship of Cheryl F.,* 170 Wis. 2d 420, 425, 489 N.W.2d 636 (Ct. App. 1992).

[14] *Cheryl F.,* 170 Wis. 2d at 425.

[15] *Cheryl F.,* 170 Wis. 2d at 425. *See also Coston v. Joseph P.,* 222 Wis. 2d 1, 23, 586 N.W.2d 52 (Ct. App. 1998) (whether evidence satisfies legal standard of incompetency for guardianship is question of law).

¶ 35. Although the court of appeals in *Cheryl F.* declared the question of the person's incompetency a question of law in a petition for guardianship proceedings, it seems to have treated the question as involving sufficiency of evidence.[16] The court of appeals declared that the testimony of the witnesses was clear and competent evidence that Cheryl could not care for herself or manage her property and that this evidence supported the circuit court's conclusion that she was incompetent.[17]

¶ 36. Brown also relies on *State v. Watson,* 227 Wis. 2d 167, 595 N.W.2d 403 (1999), in which the court concluded, as it had in *Cheryl F.,* that it would make an independent determination, as a matter of law, whether the facts met the statutory standard. In *Watson,* the statutory standard was probable cause that the person's offense was sexually motivated under chapter 980. The court concluded that the same standard of review applies in chapter 980 probable cause proceedings as in a criminal probable cause preliminary examination proceeding: An appellate court will accept the circuit court's findings of fact unless they are clearly erroneous but will review de novo whether the facts meet the statutory legal standard of probable cause.[18]

¶ 37. The second line of cases upon which Brown relies holds that a reviewing court should independently examine the record under a sufficiency of evidence standard to determine whether a party has met

---

[16] *Cheryl F.,* 170 Wis. 2d at 426.

[17] *See also Coston v. Joseph P.,* 222 Wis. 2d at 26.

[18] *State v. Watson,* 227 Wis. 2d 167, 196, 212, 595 N.W.2d 403 (1999).

its burden of proof.[19] Whether a party has met its burden of proof is a question of law a reviewing court examines without giving deference to the circuit court's conclusion.[20] The State acknowledges that the traditional sufficiency of evidence standard of review "is not inappropriate."[21] The State's position is that irrespective of the standard of review, the circuit court's order should be affirmed.

¶ 38. We next look to *State v. Curiel,* 227 Wis. 2d 389, 597 N.W.2d 697 (1999), a chapter 980 case, for the sufficiency of evidence standard of review. Among other challenges, Curiel challenged the circuit court's determination that he was a chapter 980 sexually violent person. To commit a person under chapter 980, the State has the burden of proving beyond a reasonable doubt that the person is dangerous to others because the person's mental disorder creates a substantial probability that he or she will engage in future acts of violence, that is, the State must prove that because of

---

[19] Brown cites *Poluk v. J.N. Manson Agency, Inc.,* 2002 WI App 286, ¶ 24, 258 Wis. 2d 725, 653 N.W.2d 905, and *State v. Wanta,* 224 Wis. 2d 679, 688, 592 N.W.2d 645 (Ct. App. 1999), for the sufficiency of the evidence standard of review.

[20] *Return of Property in State v. Jones,* 226 Wis. 2d 565, 596–97, 594 N.W.2d 738 (1999); *Seraphine v. Hardiman,* 44 Wis. 2d 60, 65, 170 N.W. 739 (1969); *Hallin v. Hallin,* 228 Wis. 2d 250, 258, 596 N.W.2d 818 (Ct. App. 1999).

[21] Brief of Petitioner-Respondent at 38. The State cites *State v. Forster,* 2003 WI App 29, ¶ 2, 260 Wis. 2d 149, 659 N.W.2d 144, and *State v. Lalor,* 2003 WI App 68, ¶¶ 11–14, 261 Wis. 2d 614, 661 N.W.2d 898, for the sufficiency of the evidence standard of review.

Although the court of appeals did not adopt the sufficiency of the evidence standard, it referred to "sufficiency of evidence."

the person's mental disorder, it is much more likely than not that the person will engage in future acts of sexual violence.

¶ 39. In *Curiel,* the court declared that the standard of review appropriate to commitment under ch. 980 is the standard used to review criminal convictions to determine the sufficiency of evidence.[22] This standard of review of criminal convictions has been set forth as follows: An appellate court may not reverse a conviction unless the evidence, viewed most favorably to the State and conviction, is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt.[23]

¶ 40. In other words, the test for the sufficiency of the evidence to support the order denying Brown supervised release, according to the State and at least certain parts of Brown's brief, is not whether a reviewing court is convinced by clear and convincing evidence that a person's petition for supervised release should be denied, but whether a circuit court, acting reasonably, could be so convinced by evidence it has a right to believe and accept as true. The credibility of the witnesses and the weight of the evidence are for the circuit court; a reviewing court views the evidence most favorable to the circuit court's order. If more than one reasonable inference can be drawn from the evidence, the inference that supports the circuit court's order is the one that a reviewing court adopts. The circuit

---

[22] *See also State v. Kienitz,* 227 Wis. 2d 423, ¶ 20, 597 N.W.2d 712 (1999) (relying on *Curiel*).

[23] *Curiel,* 227 Wis. 2d at 416 (quoting *State v. Poellinger,* 153 Wis. 2d 493, 501, 451 N.W.2d 752 (1990)). *See also State v. Watkins,* 2002 WI 101, ¶ 68, 255 Wis. 2d 265, 647 N.W.2d 244 (same).

court's ultimate decision on whether a person is much more likely than not to engage in acts of sexual violence if not continued in institutional care must be supported by evidence sufficient to meet the clear and convincing standard.[24]

¶ 41. The *Curiel* court rejected Curiel's position that the standard of review should be a two-tiered question of fact and law, with findings of fact not overturned unless clearly erroneous and the application of the facts to a statutory concept a question of law determined independently from a circuit court's conclusion.[25]

¶ 42. Although *Curiel* involved a petition for the commitment of a sexual predator as opposed to a chapter 980 petition for supervised release, and the procedures used in a petition for commitment and in a petition for supervised release are different, we conclude that the *Curiel* standard of independent review of the circuit court's decision on the basis of the sufficiency of evidence, rather than a review for erroneous exercise of discretion, is appropriate in the instant case.

■

¶ 43. The choice of a standard of appellate review depends in large extent on a determination of the comparative institutional strengths of appellate courts and circuit courts in making particular decisions and the need for consistency and uniformity in circuit court decisions across the state.

---

[24] *Curiel,* 227 Wis. 2d at 418–19 (quoting *Gauthier v. State,* 28 Wis. 2d 412, 415–16, 137 N.W.2d 101 (1965)). *See also Poellinger,* 153 Wis. 2d at 504 (citing *Johnson v. State,* 55 Wis. 2d 144, 147, 197 N.W.2d 760 (1972), quoting *Bautista v. State,* 53 Wis. 2d 218, 223, 191 N.W.2d 725 (1971)).

[25] *Curiel,* 227 Wis. 2d at 415–17.

¶ 44. The sufficiency of evidence standard of independent appellate review gives deference to the circuit court's strength in determining the credibility of witnesses and in evaluating the evidence and recognizes the evaluative aspects involved in a circuit court's denial of a petition for supervised release. Circuit courts are better able than appellate courts to determine the credibility of witnesses and evaluate the evidence. In making a determination about the sufficiency of evidence, a reviewing court may draw not only on a circuit court's observational advantage, but also on the circuit court's reasoning.

¶ 45. Because the sufficiency of evidence standard provides independent appellate review, it fosters consistency and uniformity in circuit court decision making. A published appellate decision on a legal issue serves to guide courts in applying facts to statutory principles and fosters consistency and uniformity in circuit courts' case-by-case evaluation of petitions for supervised release.

¶ 46. Uniformity of application of facts to law, respect for circuit courts' reasoning, and recognition of circuit courts' observational advantage in evaluating evidence are desirable goals with respect to orders on chapter 980 petitions for supervised release. These goals are more likely to be achieved with the sufficiency of the evidence standard of review than with an erroneous exercise of discretion standard of review. Accordingly, we adopt the sufficiency of evidence standard of review when reviewing a circuit court's order denying a petition for supervised release under Wis. Stat. § 980.08(4).

¶ 47. We now apply this standard of review to this case.

## II

■■■

¶ 48. Applying the sufficiency of evidence standard of review to the circuit court order denying Brown's petition for supervised release, we conclude that the evidence adduced at the hearing was not sufficient to meet the State's statutory burden imposed by Wis. Stat. § 980.08(4).

¶ 49. We agree with the court of appeals that "the [circuit] court struggled to articulate the exact basis on which it reaches this apparently close call." On our review of the evidence we conclude that the circuit court's decision that Brown is much more likely than not to engage in acts of sexual violence if he is not continued in institutional care is not supported by evidence sufficient to meet the clear and convincing standard.

¶ 50. We first set forth the procedural posture of the case. We then examine the circuit court's review of the evidence and reasoning. Lastly, we examine the record under the sufficiency of evidence standard of review.

## A

¶ 51. In 1988, a then 16–year-old Brown was adjudicated delinquent for sexually assaulting two girls. He was placed at a residential treatment center where he remained until March 1990. In 1993 he was convicted of second-degree sexual assault of a child and incest with a child and sentenced to forty months in prison. In 1995, Brown was convicted of a sexual assault that occurred in 1990.

¶ 52. On November 5, 1998 Brown was formally committed under chapter 980 and moved to Sand Ridge Secure Treatment Center.

¶ 53. In April 2002, Brown filed his first petition for supervised release. The circuit court appointed Dr. Michael Kotkin, a psychologist, to examine Brown and file a report as required by Wis. Stat. § 980.08(3).[26] Dr. Kotkin examined Brown on May 15, 2002, and prepared a report on August 2, 2002, indicating that although Brown had made treatment progress, he was not yet ready for supervised release. In September 2002, after receiving a copy of the report directly from Dr. Kotkin, Brown withdrew his petition for supervised release.

¶ 54. On October 24, 2002, Dr. David Warner, a psychologist, filed a re-examination report with the circuit court pursuant to Wis. Stat. § 980.07, which requires periodic assessments. The report did not recommend Brown's outright discharge, but it stated that "Mr. Brown has reduced his risk for sexually violent behavior to the point that he could be considered for a supervised release." Brown then petitioned for supervised release. The circuit court ordered the Department of Health and Family Services to provide an updated report explicitly stating whether the department did or did not actually support supervised release for Brown.

---

[26] Wisconsin Stat. § 980.08(3) provides in relevant part:

Within 20 days after receipt of the petition, the court shall appoint one or more examiners having the specialized knowledge determined by the court to be appropriate, who shall examine the person and furnish a written report of the examination to the court within 20 days after appointment. . . . If any such examiner believed that the person is appropriate for supervised release under the criterion specified in sub. (4), the examiner shall report on the type of treatment and services that the person may need while in the community on supervised release.

¶ 55. On December 30, 2002, the department filed the updated report, supporting supervised release. The report stated that Brown "ha[d] completed sufficient treatment at [Sand Ridge] to reduce his risk for sexually violent behavior to the point that he has become an appropriate subject for supervised release."

¶ 56. On January 20, 2003, the circuit court held a hearing on Brown's petition for supervised release. Dr. Kotkin was not called as a witness, but the circuit court allowed his report to be introduced in evidence. Dr. Kotkin had failed to file the report with the circuit court as required by statute and, at the State's request, shortly before the hearing in issue in the instant case, the circuit court ordered Dr. Kotkin to file his report.

¶ 57. The parties agree that Dr. Kotkin's report was hearsay but disagree whether the report was admissible under a recognized exception to hearsay. The court of appeals determined that Dr. Kotkin's report was admissible under Wis. Stat. § 908.02 because it was required to be filed with the court under Wis. Stat. § 980.08(3). The State argues that the report is admissible under the reasoning of the court of appeals, or as a record of regularly conducted activity (§ 908.03(6)), or as residual hearsay (§ 908.03(24)). Brown disagrees with the reasoning of the court of appeals and the State on whether the report falls under any hearsay exception.

¶ 58. The parties also disagree whether the admission of Dr. Kotkin's report resulted in violation of Brown's constitutional right to confrontation or his statutory right under Wis. Stat. § 980.03(2)(c) to "[p]resent and cross-examine witnesses." The court of appeals did not consider Brown's confrontation argument because it considered the argument amorphous and insufficiently developed.

¶ 59. The larger issue of the nature of the hearing under Wis. Stat. § 980.08(4) and the applicability of rules of evidence was not fully considered by the parties, and we do not address it. We need not and do not address the hearsay and confrontation issues, because Dr. Kotkin's report does not affect the ultimate decision. We agree with the circuit court that the report had limited value because it was based on an interview with Brown several months prior to the hearing. By its very terms, Wis. Stat. § 980.08(4) evinces the need for a timely report, presumably to give the court an accurate picture of the petitioner's condition. The statute provides that "the court, without a jury, shall hear the petition within 30 days after the report of the court-appointed examiner is filed . . . ." With or without Dr. Kotkin's report as admissible evidence, the record is insufficient as a matter of law to support the circuit court's order.

¶ 60. Dr. Warner was the only witness called at the hearing. Dr. Warner reiterated the opinion stated in his report that Brown was ready for supervised release. Dr. Warner's in-court testimony supplemented the report. Dr. Warner opined that any supervised release program for Brown should have restrictions, including "residence in a supervised setting, anti-depressant medication, continued sex offender and substance abuse treatment, and regular monitoring with drug testing and polygraph examinations."[27]

¶ 61. We turn now to the circuit court's review of the evidence and reasoning.

---

[27] *Brown*, 269 Wis. 2d 750, ¶ 6.

## B

¶ 62. We set forth the circuit court's review of the evidence and reasoning in great detail in light of the court of appeals' characterization of the circuit court's reasoning as a struggle "to articulate the exact basis on which it reaches this apparently close call."

¶ 63. The circuit court explained its decision on the record. The circuit court made no express findings of fact and did not explicitly make reference to the factors enumerated in § 980.08(4) as factors a circuit court may consider, namely:

(1) The nature and circumstances of the behavior that was the basis of the allegation in the commitment petition;

(2) The person's mental history and present mental condition;

(3) Where the person will live;

(4) How the person will support himself; and

(5) What arrangements are available to ensure that the person has access to and will participate in necessary treatment.

¶ 64. It is, however, evident from the transcript that the circuit court had these factors in mind and considered the State's statutory clear and convincing evidence burden of proof.

¶ 65. The circuit court began by recognizing the difficulty of predicting a person's future behavior. The circuit court then reviewed Brown's past sexual misbehavior in the community (both while supervised and unsupervised) as somewhat predictive of future behavior. The circuit court characterized Brown as having "a

125

rather frightening track record" from ages 15 to 20. The circuit court summarized Brown's track record as follows:

> Unfortunately, the only track record we have for [Brown] while out in the community, both supervised and not supervised, goes back about ten years. That's a standard problem in sexual—in Chapter 980 cases. But the ten year period is more of a problem with a thirty-year-old than it might be with a fifty-year-old because not only has there been a ten year period, but it's a larger segment of the respondent's life, and it means that the time frame that we can look back to is a time when he was a juvenile or a very young adult. . . . R.110:33.

¶ 66. The circuit court went on to note that Brown's pre-incarceration period involved a number of sexual assaults that "involved a material degree of force and violence" and that at least some of the assaults took place after Brown had been placed in a residential treatment center for juveniles.

¶ 67. The circuit court acknowledged that Brown's offenses did not involve considerable development and grooming of his victims. The circuit court viewed this factor as significant because "common sense" informed the circuit court that supervision is more effective in protecting the community against a chapter 980 person if the person's offenses involved "considerable grooming and planning and preparation and thought."

¶ 68. Yet the circuit court also acknowledged that Brown's behavior is not of someone who has pulled up in a car and abducted and assaulted children.

¶ 69. Brown's voluntary use of Zoloft was a concern for the circuit court. At the hearing, Dr. Warner explained that the Zoloft was prescribed to reduce and

manage Brown's sex drive. The circuit court believed that the drug may be masking "certain problems" and that Brown could stop taking the drug at any time. Zoloft had both positive and negative aspects for the circuit court: "And the concern is to some extent the positive developments here may be related to something that he may choose not to continue to do, although it also serves as a consideration to suggest that is something that could reduce the risks in the future."

¶ 70. The circuit court focused on Brown's family history, "a source of considerable sadness and sorrow and realization that the roots . . . of the difficulties and problems and crimes here, may to a large respect be things that were outside of Mr. Brown's own person and outside of his own control . . . ." Although the circuit court did not elaborate on the family history, the family history is in the record. Brown's eldest sister was the product of an incestuous relationship between Brown's mother and the mother's biological father. Brown's maternal grandfather sexually molested Brown between the ages of 11 and 13. As Brown's parole agent aptly summarized, "His pathological family, limited learning ability and the sexual assaults of his grandfather have made a negative impact on his development." The family history, according to the circuit court, "tends to suggest reasons why these things happen and reasons why he continues to present a significant risk to the community as we look down the road."

¶ 71. The circuit court viewed the actuarial instruments, that is, the tests done at Brown's initial commitment in 1998, and not repeated thereafter, as putting Brown "on the edge here . . . [but] the instruments themselves do not suggest that this defendant is much more likely than not going to re-offend."

¶ 72. The circuit court recognized Brown's favorable response to treatment, stating that Brown has "over the past years addressed treatment in a responsible and apparently healthy way, and that appears to be the principal basis for Dr. Warner's opinion that he is now ready, and the treatment and [Brown's] investment in treatment has brought this prediction of risk below the level of much more likely than not."

¶ 73. The circuit court also considered the report Dr. Kotkin had prepared several months previously, in which Dr. Kotkin opined, according to the circuit court, that Brown "is not quite ready but is moving toward readiness and may be ready in the near future." The circuit court explicitly discounted the value of Dr. Kotkin's report, declaring that "[b]ecause of the several months that have gone by since that evaluation and report, it is not very helpful in deciding where Mr. Brown is today . . . ."

¶ 74. The circuit court recognized that evidence demonstrated that "Mr. Brown is on a different track, that he had matured . . . and that he has invested himself more responsibly in treatment with some occasional and understandable setbacks."

¶ 75. After these comments generally weighing the evidence as favorable to Brown, the circuit court nevertheless concluded that "by clear and convincing evidence," Brown "is not yet a proper candidate for release and that, at this time, given those considerations, it remains much more likely than not that he would re-offend at some point over the course of the rest of his life even while supervised in the community."

¶ 76. The circuit court further elaborated on this conclusion, summarizing the extent of supervision Brown would need in the community. The circuit court's concluding words were as follows:

128

I make this finding positing what I believe is the reasonable level of supervision that can be expected, and it should be expected of the community, and which includes transitional placements either in a group home or a closely supervised setting and which includes regular treatment and regular supervision of [Brown's] activities and whereabouts. I don't posit a level of supervision that requires a 24–hour partner. If someone needs that, then they are not ready for supervised release, they need to be ready to move to a setting that involves some periods of freedom and some periods where there isn't direct supervision, and I find that [Brown] is not ready for that. So the petition for supervised release is denied.

¶ 77. In sum, the circuit court stated that it considered Brown's precommitment criminal behavior, his family history, Dr. Warner's testimony, the two psychologists' reports, Brown's use of Zoloft, and the suggested conditions of supervised release.

¶ 78. If this court were to examine only the circuit court's evaluation of the evidence and reasoning, it would conclude that the evidence, viewed most favorably to the State and the circuit court's order, is insufficient in probative value as a matter of law. The circuit court's ultimate conclusion seemed like a surprise ending to its marshaling of the evidence and reasoning.

C

¶ 79. The State urges this court to examine the entire record and not limit itself to the evidence summarized by the circuit court.

¶ 80. The State points out that Dr. Warner's report and addendum, which were admitted as evidence and considered by the circuit court, classified Brown as

suffering from pedophilia, alcohol abuse, and personality disorder NOS (not otherwise specified) with antisocial features. Dr. Warner explained that "[r]esearch has demonstrated that persons who develop deviant sexual arousal patterns in adolescence or early adulthood are likely to retain these patterns throughout most of their lives." The State asserts that the circuit court could reasonably view the fact that Brown was an adolescent or young adult when he committed his sexually violent conduct as a factor that increased, rather than reduced, Brown's risk to the community. The risk is further exacerbated, according to the State, because the assaults involved both family members and strangers.

■■■

¶ 81. Brown's criminal behavior ending 12 years ago in 1992 is troublesome and is accorded weight, as the State correctly argues, in determining whether the State has met its burden.[28] Yet this evidence cannot be the sole basis upon which to ground an order denying a petition for supervised release, for if it were, then no individual confined under Chapter 980 would ever be eligible for supervised release, regardless of how stellar his or her treatment progress.[29]

---

[28] *See* Wis. Stat. § 980.08(4).

[29] For both initial commitment and discharge under ch. 980, evidence of past sexually violent offenses before the commission of the offense that led to the initial commitment petition is not sufficient to establish that the committee has a mental disorder. *See* Wis. Stat. § 980.05(4) (initial commitment trial); Wis JI—Criminal 2506 (for discharge petitions under Wis. Stat. § 980.09) (emphasis added):

> Evidence has been submitted that (name) committed other sexually violent offenses before committing (identify offense on which the petition is based). *This evidence is not sufficient to establish that (name) has a mental disorder.* Before you may find that

¶ 82. The State asks this court to consider a telephone conversation Brown had with his youngest half sister, whom he had sexually assaulted during her childhood. She had offered to introduce Brown to young adult women when he returned to the community. Brown refused the offer. Dr. Warner saw Brown's rejection of the offer as positive.[30] The State argues that this conversation can be viewed by the circuit court as inappropriate and as grounds for denial of Brown's petition.

¶ 83. The State also asserts that Brown's lack of family support when on supervised release would pose problems. In addition to the alleged phone call from Brown's half sister, Brown stated that his first stepfather (the biological father of Brown's two younger half sisters) wants Brown locked up for the rest of his life. This lack of support, contends the State, poses a risk of reoffense.

¶ 84. The State argues that Dr. Warner's testimony about the actuarials taken at Brown's initial commitment supports the circuit court's order. Actuarials assessed Brown at commitment to be in the low-medium to high range of risk to reoffend. Dr. Warner testified that the actuarials measured only Brown's risk at the time of commitment and were of no use in evaluating his current risk of reoffense. The circuit court acknowledged that the instruments themselves do not suggest that Brown is much more likely than not to reoffend.[31]

(name) has a mental disorder, you must be so satisfied to a reasonable certainty by evidence that is clear and convincing.

[30] Dr. Warner suggested that supervised release include a provision allowing Brown only supervised visits with his family.

[31] Actuarial Risk Assessment tests (ARAs) estimate " 'risk' of recidivism . . . based on aggregate or group data." Eric S. Janus & Robert A. Prentky, *Forensic Use of Actuarial Risk Assessment With Sex Offender: Accuracy, Admissibility and Accountability*, 40 Am. Crim. L. Rev. 1443, 1476 (2003). In other

¶ 85. The State's brief reviews the various treatment programs in which Brown participated, including those in which his participation in prior years was inadequate, and emphasizes that Dr. Warner opined that Brown is capable of further progress, that he has not yet exhausted the treatment opportunities available

words, "the actuarial assessment tells us the empirically measured rate of recidivism among a group of sex offenders who share a set of characteristics with the subject of the evaluation." *Id.*

A user of this tool must understand that the ARAs scales "must be interpreted as reporting risk without consideration of treatment or state-of-the-art supervision." *Id.* at 1481.

In his report, Dr. Warner opined that one of the ARAs, the MnSOST-R, indicated that the offenders in the sample group comprising the actuarial assessment who scored above a threshold number re-offended 70% of the time within six years of release from a secure setting. The other two ARAs, also administered upon Brown's initial commitment, measured lower re-offense rates (21.1% and 40%) for their sample groups.

Dr. Warner's testimony cannot, however, be summarized to state that Brown has a 70% chance for re-offending (or a 21.1% or a 40% chance). The actuarial does not refer specifically to Brown or any other individual to whom the ARAs might be administered. *Id.* at 1477. Professor Janus and Dr. Prentky highlighted this very problem in using ARAs in sex offender cases:

> [W]e urge courts to control the language used to describe the statistical evidence. Both research and commonsense suggest that the way in which risk is communicated affects the way in which it is understood. Since risk is inherently a group characteristic, risk assessments should be ascribed to the relevant group, not to the individual defendant.
>
> . . . .
>
> [C]ourts should exclude testimony that directly ascribes a risk to the defendant.

*Id.* at 1495–96.

in the institution, and that the research literature is not clear that further treatment in a secure setting will further reduce the risk of recidivism. Dr. Warner opined that Brown would benefit from treatment programs in a secure setting or in the community. The State views this testimony as evidence supporting the circuit court order denying Brown supervisory release.

¶ 86. The State stresses that despite Dr. Warner's conclusions favorable to Brown, the psychologist did detail problems. Brown was, for example, resistant to group therapy in the early years of his commitment. But Dr. Warner traced Brown's successful treatment progress in the two years preceding the filing of the petition for supervised release at issue in the instant case, and the circuit court acknowledged Brown's treatment progress.

¶ 87. The State urges us to focus on those aspects that are negative to Brown's supervised release, totally ignoring those matters favorable to Brown that the circuit court noted.

■■

¶ 88. In contrast, Brown urges us to focus on Dr. Warner's favorable report. But courts are not rubber stamps for expert testimony. Neither a circuit court nor a reviewing court is required to accept an expert's ultimate conclusion.

¶ 89. The circuit court may accept or reject expert testimony,[32] but in the instant case the extent to which the circuit court weighed one expert's opinion over the other and weighed parts of each expert's reports is not at issue. Under any variation of acceptance or rejection of the two experts' opinions and factual matters de-

[32] *State v. Kienitz*, 227 Wis. 2d 423 438, 597 N.W.2d 712 (1999).

133

scribed therein in the instant case, the available evidence and reasonable inferences therefrom do not rise to the level of clear and convincing evidence that Brown is much more likely than not to engage in acts of sexual violence if not continued in institutional care.

¶ 90. Brown also urges us to focus on the recommendation of the Department of Health and Family Services that Brown be granted supervised release, although the department did not file a petition on Brown's behalf pursuant to Wis. Stat. § 980.08(1).

■■■

¶ 91. But courts are not rubber stamps for the department. Neither a circuit court nor a reviewing court is required to accept the recommendation of the department.

¶ 92. On the other hand, a court should not lightly dismiss a recommendation of the department. This court has explained that the legislature has charged the department with the custody and control of sexually violent persons and thus views the department as being in the best position to evaluate the various risks and benefits of placing a committed individual on supervised release. The court explained the role of the department in *State v. Morford,* 2004 WI 5, ¶¶ 53–54, 268 Wis. 2d 300, 674 N.W.2d 349, as follows:

> The department is an integral part of the procedural protections provided to a chapter 980 committee in Wis. Stat. chapter 980. The department is charged with the "custody and control" of a sexually violent person, whether the chapter 980 committee is institutionalized or on supervised release. The legislature thus views the department as being in the best position to evaluate the various risks and benefits of placing a committed individual on supervised release or revoking supervised release.

134

It is the department that has sufficient experience dealing with sexually violent persons, as well as experience with the particular individual who has been committed, to make a sound, dispassionate, and unbiased decision regarding a committed person's condition.

¶ 93. We have reviewed the record and the parties' arguments and analyses of the evidence. The State's brief marshaled the evidence unfavorable to Brown's supervised release, and we carefully considered this evidence as well as the evidence favorable to Brown and accepted by the circuit court. Simply put, we conclude as a matter of law that the circuit court's order denying Brown's petition for supervised release is not supported by evidence sufficient to meet the clear and convincing evidence standard.

¶ 94. For the reasons set forth, the decision of the court of appeals is reversed, and we remand the cause to the circuit court with instructions to notify the Department of Health and Family Services that it should submit to the circuit court, pursuant to Wis. Stat. § 980.08(5), a plan for Brown's supervised release.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded to the circuit court.

¶ 95. LOUIS B. BUTLER, JR., J. (*concurring*). I join the mandate and all but ¶ 59 of the majority opinion in this matter. While I agree with the majority that Dr. Kotkin's report does not affect our ultimate decision, I write separately because I would reach the larger issue of the applicability of chapters 901 to 911, otherwise known as the rules of evidence,[1] at a hearing under Wis. Stat. § 980.08(4).

---

[1] *See* Wis. Stat. § 911.02.

¶ 96. As Justice Roggensack points out in her dissent, we agree that as a general rule, hearsay evidence is not admitted over an objection unless there is an exception that permits its admission. Roggensack, J., dissenting, ¶ 114. She notes that exceptions to the general rule may be established by statute. *Id.* She points out that "the usual place to look for such exceptions is Wis. Stat. Ch. 908," which governs the basic evidentiary rules regarding hearsay evidence. *Id.* She indicates that there are other statutes that provide that the rules of evidence do not apply, thereby affording the opportunity to have hearsay evidence admitted. *Id.* On these points, we agree. I would begin the inquiry, however, by looking first at the applicability and scope of the rules of evidence, in order to determine whether an exception exists with respect to Wis. Stat. § 980.08(4).

¶ 97. Wisconsin Stat. § 901.01 provides the scope of the rules of evidence in general, and specifies that chapters 901 to 911 "govern proceedings in the courts of the state of Wisconsin except as provided in ss. 911.01 and 972.11." Section 911.01(1) clearly states that the rules of evidence "apply to the courts of the state of Wisconsin . . . in the proceedings and to the extent hereinafter set forth except as provided in s. 972.11." Section 911.01(2) provides that the rules of evidence "apply generally to proceedings in civil and criminal actions." Section 911.01(4) lists when the rules of evidence are inapplicable.[2] Unless specified there, excep-

---

[2] (4) RULES OF EVIDENCE INAPPLICABLE. Chapters 901 to 911, other than ch. 905 with respect to privileges or s. 901.05 with respect to admissibility, do not apply in the following situations:

(a) *Preliminary questions of fact.* The determination of questions of fact preliminary to admissibility of evidence when the issue is to be determined by a judge under s. 901.14(1).

tions to the applicability of the rules of evidence do not exist unless clearly set forth elsewhere in the statutes.

¶ 98. Nothing in chapters 901 to 911 exempts the applicability of the rules of evidence in ch. 980 proceedings. The rules of evidence include the rules governing the admissibility of hearsay evidence. *See* Wis. Stat. ch. 908. Hearsay is not admissible except as provided by chapter 908 or by other rules adopted by this court or by statute. Wis. Stat. § 908.02(2). Hearsay exceptions are identified in Wis. Stat. §§ 908.03–908.045. The dissent has not pointed to any hearsay exceptions that would allow for the admissibility of Dr. Kotkin's report. Thus, unless chapter 980 creates an exception to the general rule regarding the applicability of the rules of evidence, the rules of evidence apply and govern the proceedings.

¶ 99. Wisconsin Stat. § 980.03(2) states that at any hearing under this chapter, except as provided in §§ 980.09(2)(a) and 980.10, and without limitation by enumeration, the person who is the subject of a sexually violent person petition has the right to counsel, including appointed counsel, the right to remain silent, the right to present and cross-examine witnesses, and the right to have the hearing recorded by a court reporter.

(b) *Grand Jury: John Doe proceedings.* Proceedings before grand juries or a John Doe proceeding.

*(c) Miscellaneous proceedings.* Proceedings for extradition or rendition; sentencing, or granting or revoking probation, issuance of arrest warrants, criminal summonses and search warrants; proceedings under s. 971.14(1)(c); proceedings with respect to pretrial release under ch. 969 except where habeas corpus is utilized with respect to release on bail or as otherwise provided in ch. 969.

(d) *Small claims actions.* Proceedings under ch. 799, except jury trials.

The exceptions provided govern discharge proceedings, not proceedings for supervised release pursuant to Wis. Stat. § 980.08.

¶ 100. At a proceeding for supervised release, the court shall grant the petition for release unless the state "proves by clear and convincing evidence" that the person is still sexually violent and that it is still substantially probable that the person will engage in acts of sexual violence if not institutionalized. Wis. Stat. § 980.08(4). In other words, evidence must be produced by the state, which must meet its burden, and the person retains the right to cross-examine the witnesses. Inadmissible hearsay cannot be used to circumvent the person's right to cross-examine witnesses against him. There is nothing in Wis. Stat. § 980.08(4) that renders the rules of evidence inapplicable at this proceeding, and nothing that would suggest or create any hearsay exception for Dr. Kotkin's report.

¶ 101. The court of appeals and the dissent each suggest that because Wis. Stat. § 980.08(3) requires the licensed professional to furnish a written report of the examination to the court, it would be absurd to conclude that admissibility was not provided by the statute. *Compare State v. Brown,* 2004 WI App 33, 269 Wis. 2d 750, ¶¶ 13–14, 676 N.W.2d 555; with Roggensack, J., dissenting, ¶¶ 115–16. I respectfully disagree. Section 980.08(3) merely discusses the procedure for the appointment of court experts and the filing of their reports with the court. That section does not set forth, nor exempt, the rules of evidence to be applied at the proceeding. While the court *"may* consider . . . the person's mental history and present mental condition,"[3] it does so subject to the procedure set forth in Wis. Stat.

---

[3] Wis. Stat. § 980.08(4) (emphasis added).

§ 980.03(2) and, because nothing in chapter 980 indicates otherwise, the rules of evidence. As no hearsay exception exists that would allow Dr. Kotkin's report to be admitted, and because the rules of evidence apply during proceedings involving a petition for supervised release, the trial court should not have considered the report absent Dr. Kotkin's testimony.

¶ 102. For the foregoing reasons, I respectfully concur.

¶ 103. PATIENCE DRAKE ROGGENSACK, J. (*dissenting*). I write separately, in part, because I conclude that the trial court properly admitted and considered the report of Dr. Michael S. Kotkin, even though Kotkin was not present to testify at Richard A. Brown's ch. 980 hearing. I also write separately because I dissent from the majority opinion's reversal of the court of appeals decision that affirmed the finding of the circuit court that the State proved by clear and convincing evidence that Brown is still a sexually violent person and that it is still substantially probable that he will engage in acts of sexual violence if he is not continued in institutional care.

## I. BACKGROUND[1]

¶ 104. Brown, who was born on March 23, 1972, has a long history of sexual assaults that have been perpetrated by force on young victims. He was first convicted in 1988 of sexually assaulting a 10–year-old girl, when he was 16 years old. Apparently, prior to that

---

[1] The facts below are taken from the record and were available to the circuit court for its consideration in deciding whether the State had met its burden by clear and convincing evidence.

conviction, in 1986 and 1987 when he was 14 and 15 years old, he repeatedly sexually assaulted his three stepsisters, and though his mother knew of the assaults, she did not appropriately intervene. In 1990 at 18 years of age, he was convicted of sexually assaulting his 13–year-old stepsister, who is mentally retarded.

¶ 105. Court intervention that provided treatment for Brown's aggressive sexual behavior followed the 1990 assault on his stepsister. However, in 1993 when he was 21 years of age, he raped a 13–year-old runaway; again, this sexual assault was perpetrated with the use of force. He was sentenced to prison subsequent to that conviction. In 1998, following his mandatory release date from prison, he was tried and committed to the Wisconsin Resource Center as a sexually violent person. He was later transferred to Sand Ridge Secure Treatment Center (Sand Ridge). This case arises out of one of Brown's petitions for supervised release, which he filed under Wis. Stat. § 980.08(4) (2001–02).[2]

¶ 106. Prior to the hearing on Brown's petition, his propensity to commit acts of sexual violence upon release was assessed. Two of those assessments were used as evidence in response to Brown's petition for supervised release: that of Dr. Michael S. Kotkin and that of Dr. David E. Warner. Both psychologists completed written reports after personal interviews with Brown. Kotkin's report is dated August 2, 2002, and Warner's is dated October 2, 2002, with an update as of December 27, 2002. Kotkin's report was ordered by the court to assist in deciding on a petition for supervised release that Brown filed in April of 2002. It was

[2] All subsequent references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

prepared under the statutory directive of Wis. Stat. § 980.08(3). Brown withdrew that petition for supervised release after receiving Kotkin's report and then promptly filed the petition now under review. During the course of the proceedings on Brown's second petition, the circuit court ruled that Kotkin's report could be filed, and the court considered it as relevant evidence, over Brown's hearsay objection. Warner's report and testimony came in without objection.

¶ 107. The reports and testimony were in agreement in demonstrating that Brown has had a consistent diagnosis of pedophilia that involves, " 'recurrent, intense sexually arousing fantasies, sexual urges, or behaviors involving sexual activity with a prepubescent child' . . . that are present for at least six months." Brown also has had a consistent diagnosis of personality disorder. This mental illness has antisocial features that were described as " 'an enduring pattern of inner experience and behavior that deviates markedly from the expectations of the individual's culture' " of " 'long duration' . . . and [that are] pervasive across a broad range of personal and social situations." These diagnoses have been in place and reaffirmed at every evaluation, beginning with the 1998 evaluation done prior to Brown's trial upon the State's petition to commit him as a sexually violent person.

¶ 108. As part of Warner's October 2002 assessment, he administered three actuarial risk assessment tests.[3] Wagner found that Brown rated in the "high-risk category for sexual re-offending" on the MnSOST-R

---

[3] An explanation of these testing devices can be found in: Eric S. Janus & Robert A. Prentky, *Forensic Use of Actuarial Risk Assessment with Sex Offenders: Accuracy, Admissibility and Accountability*, 40 Am. Crim. L. Rev. 1443 (2003).

diagnostic test. Warner's report explained that at least 70% of those who scored in the range that Brown scored on the MnSOST-R would reoffend within six years of release from a secured setting. The other two tests Warner conducted showed that Brown was in a lower range for propensity to reoffend than did the MnSOST-R. However, Warner's report also stated that "[r]ecent research has demonstrated that actuarial instruments are sensitive to different types of sexual offending, with the MnSOST-R identifying offenders that have committed *forceful* sexual assaults on related or unrelated victims across a range of ages." (Emphasis added.) Warner's report also states that "[r]esearch has demonstrated that persons who develop deviant sexual arousal patterns in adolescence or early adulthood are likely to retain these patterns throughout most of their lives. Mr. Brown's diagnosis of pedophilia, by definition, indicates that he is likely to have an ongoing deviant sexual interest in prepubescent and pubescent girls." However, notwithstanding the negative comments I have reported above, Warner also opined that "it would be *possible* to manage Mr. Brown's risk for sex offense recidivism safely in the community with the supervision and treatment resources currently available in Milwaukee County." (Emphasis added.)

¶ 109. Kotkin reviewed much the same information as Warner, but he came to a very different conclusion. Although he was encouraged by Brown's beginning to get involved in treatment that he had earlier shunned, Kotkin noted that as late as March 7, 2002 "Richard's lack of participation in group process continues to be identified as an ongoing problem." He also weighed Brown's mental history and ongoing problems with his family as factors that caused him to conclude that Brown was not ready for supervised release.

¶ 110. The circuit court heard all of the testimony, reviewed the reports available to it, considered the nature of Brown's pedophilia, and the length of time over which Brown had exhibited sexually deviant behavior. The court also reviewed Brown's recent treatment with the prescription drug Zoloft, which apparently had caused him to shift some of his thinking from sexually oriented matters to other concerns, and the fact that Brown could choose to discontinue Zoloft at any time. The court noted that Brown had not yet completed all the treatment that was available to him at Sand Ridge. The court also noted that Warner had conditioned his opinion that supervised release was appropriate on extensive, detailed conditions. The court then found that the State had proven by clear and convincing evidence that Brown was still a sexually violent person and that it was still substantially probable that he would engage in acts of sexual violence if he did not remain in institutional care.

## II. SUFFICIENCY OF THE EVIDENCE

A. Standard of review

¶ 111. Whether an item of evidence that has been objected to as hearsay was properly admitted is a question of law that we review without deference to the circuit court. *State v. Joyner,* 2002 WI App 250, ¶ 16, 258 Wis. 2d 249, 653 N.W.2d 290.

¶ 112. We review the sufficiency of the evidence for the circuit court's finding that Brown was still a sexually violent person and that it was still substantially probable that he would engage in acts of sexual violence under the same standard we use to review the sufficiency of evidence for a criminal conviction. *State v. Curiel,* 227 Wis. 2d 389, 417, 597 N.W.2d 697 (1999). As

we have explained, we are not required to be convinced that the proof was sufficient, only that a reasonable trier of fact could find the proof sufficient. *Id.* at 418–19.

## B. Review of trial court decision

### 1. Admission of Kotkin report

¶ 113. Brown objected to the admission of the Kotkin report as hearsay. The circuit court overruled his objection because of the statutory scheme set out by the legislature for ch. 980 proceedings. The court of appeals also analyzed the report in terms of legislative directives that are applicable to petitions for supervised release conducted under Wis. Stat. § 980.08. In my view, that is the correct analysis and therefore, the report was properly admitted.

¶ 114. All agree that as a general rule, hearsay evidence is not admitted over an objection, unless there is an exception that permits its admission. Exceptions to the inadmissibility of hearsay may be established by statute. *See R.S. v. Milwaukee County,* 162 Wis. 2d 197, 204–07, 470 N.W.2d 260 (1991). The usual place to look for such exceptions is Wis. Stat. ch. 908, which defines and explains the basic evidentiary rules relating to the admission of hearsay. However, that chapter is not the only place where statutory exceptions to the usual hearsay rules are found. There are many other statutes that provide that the rules of evidence do not apply, thereby affording the opportunity to have hearsay evidence admitted.[4] Accordingly, it is reasonable to

---

[4] For example, the rules of evidence do not apply in small claims actions, Wis. Stat. § 799.209(2) (2003–04), in contested case hearings under ch. 227, Wis. Stat. § 227.45(1) (2003–04), or

examine Wis. Stat. § 980.08 to see if it provides an exception to the usual rules regarding the admission of hearsay, as well.

¶ 115. Kotkin prepared the report at issue here at the directive of the court. By filing a petition for supervised release, Brown set in motion the statutory directives that resulted in Kotkin's report and its filing with the court. Stated otherwise, once a petition for supervised release is filed, a circuit court is required to "appoint one or more examiners having the specialized knowledge" to conduct an examination of the petitioner to assess the petitioner's propensity to reoffend. Wis. Stat. § 980.08(3). When the examination is completed, the examiner is required to "furnish a written report of the examination to the court." *Id.* When the circuit court rules on the petition, it is directed by statute to consider all evidence that makes up the petitioner's mental history. Section 980.08(4). The report prepared under § 980.08(3) is referred to as having been "filed with the court" in § 980.08(4). Once the report is filed, it is a part of a petitioner's mental history that the court is to consider. *See id.*

¶ 116. In my view, the statutory scheme set out in regard to conducting an examination, preparing such a report and filing it with the court, when combined with the court's obligation to consider a petitioner's mental history, causes Kotkin's report to be an exception to the general rules regarding the admissibility of hearsay. To then conclude that the court cannot use the very report it is required to obtain and the examiner is required to

in proceedings before a condemnation commission, Wis. Stat. § 32.08(6)(a) (2003–04), and in a hearing to grant, reduce, increase or revoke a condition of supervised release, information offered need not conform to the rules of evidence. Wis. Stat. § 969.08(8) (2003–04).

furnish to the court, makes no sense. While some may say that the law and common sense are not necessarily synonyms, in my view, they should not be strangers. Accordingly, I conclude the Kotkin report was properly admitted, pursuant to the statutory exception provided for in Wis. Stat. § 980.08(3) and (4).

2. Evidence submitted

¶ 117. A petition for supervised release is reviewed according to whether the proof was sufficient under the terms established by the legislature in Wis. Stat. § 980.08(4).[5] It provides:

> (4) The court, without a jury, shall hear the petition . . . [and] shall grant the petition unless the state proves by clear and convincing evidence that the person is still a sexually violent person and that it is still substantially probable that the person will engage in acts of sexual violence if the person is not continued in institutional care. In making a decision under this subsection, the court may consider, without limitation because of enumeration, the nature and circumstances of the behavior that was the basis of the allegation in the petition under s. 980.02(2)(a), the person's mental history and present mental condition, where the person will live, how the person will support himself or herself and what arrangements are available to ensure that the person has access to and will participate in necessary treatment, including pharmacological treatment using an antiandrogen or the chemical equivalent of an antiandrogen if the person is a serious child sex of-

---

[5] Wisconsin Stat. § 980.08(4) was revised in the 2003–04 statutes so that the State is required to prove only that "it is still likely that the person will engage in acts of sexual violence if the person is not continued in institutional care," rather than it being substantially probable that the person will so act unless his or her institutionalization is continued. 2003 Wis. Act 187, § 4.

fender. A decision under this subsection on a petition filed by a person who is a serious child sex offender may not be made based on the fact that the person is a proper subject for pharmacological treatment using an antiandrogen or the chemical equivalent of an antiandrogen or on the fact that the person is willing to participate in pharmacological treatment using an antiandrogen or the chemical equivalent of an antiandrogen.

¶ 118. On a challenge to the sufficiency of the evidence, all evidence that was before the circuit court for its decision is reviewed in the light most favorable to the State. *See State v. Poellinger,* 153 Wis. 2d 493, 501, 451 N.W.2d 752 (1990). In *Curiel,* we specifically rejected a de novo standard of review and stated that a determination of whether it was "substantially probable" that the proposed committee would reoffend is a question of fact for the trier of fact to determine. *Curiel,* 227 Wis. 2d at 418 n.9. We also explained that when testing the sufficiency of the evidence, we must affirm the decision of the circuit court unless no finder of fact, acting reasonably, could find that the defendant was substantially probable to commit future acts of sexual violence. *Id.* at 418–19.

¶ 119. It is not the volume of testimony in one direction or another that determines whether the evidence was sufficient. *See id.* at 419–20. Accordingly, when examining the sufficiency of the evidence, we do not reweigh the probative value of various pieces of evidence; rather, it is only when the evidence supporting the trier of fact's decision is " 'inherently or patently incredible' " that we will substitute our judgment for that of the trier of fact. *Id.* at 420 (quoting *Gauthier v. State,* 28 Wis. 2d 412, 416, 137 N.W.2d 101 (1965)). Additionally, we have explained that "inherently or

147

patently incredible evidence is that type of evidence which conflicts with nature or fully established or conceded facts." *Curiel,* 227 Wis. 2d at 418–19 (citing *Day v. State,* 92 Wis. 2d 392, 400, 284 N.W.2d 666 (1979)).

¶ 120. The majority opinion agrees that *Curiel* sets the standard, yet it ignores all the directives of *Curiel* and does a de novo review wherein it reweighs the evidence and comes up with its own finding of fact. Majority op., ¶ 93. For example, nowhere in the record is it stated, or even implied, that Brown's diagnosis of pedophilia has been changed or that his long history of sexual violence has no reliability in predicting his propensity to commit acts of sexual violence in the future. Instead, the majority says that it "is troublesome and is accorded weight." Majority op., ¶ 81. The majority opinion ignores Brown's score on the MnSOST-R, the diagnostic test that most accurately predicts future acts of sexual violence by those persons who have used violence in their sexual assaults, as Brown has. Brown's test result showed that there is a 70% probability that Brown would reoffend upon release. Instead, the majority opinion ignores these test results and relies on Brown's scores on two tests that are less reliable for violent sex offenders like Brown. Majority op., ¶ 84. The majority opinion does not concern itself with the testimony of Kotkin, who advised against releasing Brown. Majority op., ¶ 59. It also ignores most of Warner's report, except that portion where he says it is *"possible"* that Brown could be maintained in supervised release. (Emphasis added.)

¶ 121. And finally, the majority opinion does not conclude that the circuit court relied on inherently or patently incredible evidence. Yet, that is the test we have established for overturning the finding of a circuit court in a ch. 980 proceeding. *Curiel,* 227 Wis. 2d at

418–20. As this court stated in *State v. Kienitz,* 227 Wis. 2d 423, 434–35, 597 N.W.2d 712 (1999),

> "If any possibility exists that the trier of fact could have drawn the appropriate inferences from the evidence adduced at trial to find [that the defendant is a sexually violent person], an appellate court may not overturn a verdict even if it believes the trier of fact should not have found [the defendant to be a sexually violent person] based on the evidence before it."

(Quoting *Poellinger,* 153 Wis. 2d at 507.) This record is chock full of evidence that supports the circuit court's decision. *See supra* ¶¶ 107–10. In addition, it was Warner's view that Brown's "medium-low and medium-high risk scores on the RRASOR and Static-99 do not negate his high risk MnSOST score." Brown is a sexually violent person, and the class of offenders to which he belongs has a 70% probability of reoffending upon release from a secured treatment facility.

¶ 122. The basis for the majority opinion is not found in the law. Rather, the majority opinion simply reflects its view that it is time for Brown to get out. That is not what the legislature decided when it enacted ch. 980 and set specific standards for the courts to apply. It also is not what we decided in *Curiel* and *Kienitz* regarding an appellate court's review of the sufficiency of the evidence to support a finding of the circuit court in a ch. 980 proceeding.

¶ 123. Therefore, because I would affirm the court of appeals and the circuit court, I respectfully dissent from the majority opinion.

¶ 124. I am authorized to state that Justices JON P. WILCOX and N. PATRICK CROOKS join this dissent.